Frank N. FORTNER et al., Appellants,

v.

Earl B. JOHNSON, Appellee.

No. 16726.

Court of Civil Appeals of Texas.

Fort Worth.

May 20, 1966.

Rehearing Denied June 17, 1966.

Burford, Ryburn & Ford, Wayne Pearson and Robert A. Wooldridge, Dallas, for appellant Frank N. Fortner.

David S. Curtis, Dallas, for appellant Sandra Lee Sample.

Bradford & Pritchard, and W. A. Pritchard, Dallas, for appellee.

OPINION

LANGDON, Justice.

This suit involves notes and assignments. It was tried before a jury.

On September 11, 1961 the appellant, Frank N. Fortner, conveyed to the appellee, Earl B. Johnson, thirty-five (35) acres of land in Dallas County. As part consideration Johnson executed and delivered to Fortner a $73,000.00 first lien note payable to order of the latter. The note bore interest at five (5) per cent per annum. It was payable in seven annual installments of $9,733.28 each, with the first of such installments being due on September 11, 1962 and an eighth and final installment in the amount of $4,867.04 being due on February 11, 1969. The deed of conveyance reserved a vendor's lien to secure payment of the note and was additionally secured by deed of trust covering the land conveyed.

In March, 1962, Fortner employed J. T. Sample, an attorney, to represent him in a divorce action. Sample admitted he learned about the $73,000.00 note at that time. He testified that he also discussed the note with Fortner in preparation of the latter's income tax return and that during the latter part of May or early June, 1962, he and Fortner went to Arkansas for the joint purpose of buying some gravel property and that Fortner offered the use of the $73,000.00 note as collateral for a loan if the deal could be worked out.

Fortner testified that (a) he and Sample discussed using the $73,000.00 note for the purpose of borrowing money to purchase the Arkansas property; (b) he accompanied Sample to several prospective lending institutions for this purpose with the note in his possession; (c) later, Sample told him that Baxter Bros. had agreed to loan the full value of the note whereupon he inquired if he should not sign the note over;

(d) Sample suggested he wait until they made the loan; he then left the note with Sample with all of his other papers.

Thereafter J. T. Sample negotiated a $54,000.00 loan on behalf of Dalworth Investment Company from Frankfurt's Texas Investment Corporation (hereinafter called Dalworth and Frankfurt's, respectively) using the $73,000.00 note as collateral. Sample then prepared two transfer of lien forms, one from Fortner to Dalworth and the second from Dalworth to Frankfurt's. (Hereinafter referred to as Exhibits 3 and 4, respectively.) The transfer of lien forms contained the following sentence: "This transfer of note and assignment of liens is made and given for collateral purposes to secure repayment of a loan to be made by transferee, repayment of which will render this agreement of transfer and assignment null and void and of no further force or effect, otherwise the same to remain absolute and vested in the named beneficiary of this transfer and assignment." This sentence will hereinafter be referred to as the controversial sentence. These two forms and the $73,000.00 note were delivered to Frankfurt's; both transfer of lien forms and the endorsement on the back of the note were purported to be signed by Fortner. Sample also executed a $54,000.00 note and collateral agreement.

Frankfurt's advanced $25,000.00 to Dalworth but was unable to raise funds for the balance of the loan.

Sample then negotiated a $55,000.00 loan by Dalworth from W. A. Pritchard, Trustee, using the $73,000.00 note as collateral. The loan was closed July 25, 1962, at Frankfurt's office at which time W. A. Pritchard delivered cashier's checks to Dalworth for $30,000.00 and to Frankfurt's for $25,000.00. Pritchard then received the $73,000.00 note, which was endorsed by Frankfurt's, the transfer of lien from Frankfurt's to W. A. Pritchard, Dalworth's note for $55,000.00, the deed of trust executed by appellee Johnson securing the $73,000.00 note, the transfers of liens from Fortner to Dal-

worth (Exhibit 3) and Dalworth to Frankfurt's (Exhibit 4) and miscellaneous other papers.

W. A. Pritchard acted as agent for J & J J Sales Company in making the $55,000.00 loan and on July 26, 1962, he endorsed the $55,000.00 note and the $73,000.00 note to it and executed a transfer of lien form to it. He then filed for record the four transfer of lien forms and delivered the other instruments to J & J J Sales Company.

The collateral agreement executed by Pritchard and Dalworth provided that Dalworth would collect the first payment due by appellee Johnson on the $73,000.00 note. On or about September 10, 1962, Johnson delivered to Dalworth, his check for $13,013.28 which stated on the front thereof as follows: "9–11–62 payment on note due Frank N. Fortner, & assigned to you, by him: $9,733.28 Interest, in full @ 5% from 10–18–61 thru 9–10–62—$3,280.00".

The $13,013.28 check (including the $9,733.28 annual payment plus $3,280.00 interest) was endorsed to the order of Frank N. Fortner only. The jury found that Fortner endorsed the check. Fortner admitted he received it but denied signing it. He admitted he got $10,000.00 from the proceeds of it. At the same time, Fortner received the note of Dalworth, signed by J. T. Sample, for $63,266.72. This amount represented the difference between the $73,000.00 note and appellee's principal payment of $9,733.28 on the note.

On or about July 23, 1963, Fortner wrote a letter to E. B. Jackson. (The envelope was addressed to E. B. Johnson.) The letter, intended for Johnson and demanding that the next payment on the note be made at his lawyer's office in Las Vegas, was received by the appellee. It was the only letter written by Fortner to the appellee. On or about August 31, 1963, J & J J Sales Company transferred and assigned to appellee Johnson both of said notes (the $73,000.00 and $55,000.00 notes) and delivered an assignment of lien to appellee. The

first payment on the $55,000.00 note executed by Dalworth was due September 11, 1963. No payment was ever made by Dalworth to the appellee on this note. (Fortner admits this in his brief.) The only security appellee had for the payment of the $55,000.00 note was his lien on the $73,000.00 note.

After Fortner had, by his letter dated July 23, 1963, made demand upon the appellee to send him the next payment on the $73,000.00 note the appellee filed this suit on September 11, 1963, the due date of the next annual payment on said note and without waiver of any rights tendered into the registry of the court the $12,896.61 payment then due on the note. The $55,000.00 note of Dalworth being in default, the appellee elected to declare the entire balance due. In this suit against Dalworth, Sample, Fortner, and Frankfurt's, the appellee Johnson sought judgment for his debt (amount due on the $55,000.00 note), interest and attorney's fees and for foreclosure of his lien on the $73,000.00 note and the funds in the registry of the court which consisted of payments made on the $73,000.00 note during litigation.

Alternatively, appellee sued Frankfurt's on its warranty of title to the $73,000.00 note. By cross-action Fortner sought return of the $73,000.00 note and the quieting of his title thereto, for title to the funds on deposit in the registry of the court and other relief against appellee. In the alternative appellant sought judgment against Dalworth and Sample for damages in the amount of the balance due on the $73,000.00 note.

On September 11, 1964, while the case was pending, the next payment was due on the $73,000.00 note and the appellee again without waiver of any rights paid $12,409.95 then due into the registry of the court. Interest in the sum of $716.10 had been earned on the funds in the registry of the court to the date of trial.

J. T. Sample was killed on November 15, 1964, and his daughter and administratrix, Sandra Lee Sample, was substituted in his place. It was established during the trial that Dalworth was the alter ego of J. T. Sample and that at the time of his death, his liabilities exceeded the value of his assets, including the assets of Dalworth.

The case was submitted on twenty-five special issues. Briefly, the issues and the jury's answers thereto were as follows:

In answer to issues 1, 2, 3 and 4, respectively, the jury found that Fortner had signed the $73,000.00 note, the assignments of liens from Fortner to Dalworth (Exhibit 3) and from Dalworth to Frankfurt's (Exhibit 4) and the $13,013.28 check representing payment on the note.

Special issues 5 and 8, respectively, inquired as to whether or not Victor Frankfurt, prior to his disbursement of funds in connection with the $54,000.00 loan to Dalworth, knew that the assignment of the $73,000.00 note and lien from Dalworth to Frankfurt's (Issue 5) and from Fortner to Dalworth (Issue 8) were given for collateral purposes to secure repayment of a loan to be made transferee, repayment of which will render this agreement of transfer and assignment null and void and of no further force and effect, otherwise the same to remain absolute and vested in the named beneficiary of this transfer and assignment. (Same language as contained in the controversial sentence.) The jury found in answer to each of such issues that Frankfurt had such knowledge.

Issues 6, 7 and 9, 10 following issues 5 and 8, respectively, were conditioned on a "no" answer to 5 and 8 and were thus unanswered.

Special issues 11 and 14 were identical to 5 and 8 except they inquired as to whether or not Pritchard had such knowledge before disbursing funds on the $55,000.00 loan. The jury answered that Pritchard had such knowledge.

Issues 12, 13 and 15, 16, conditioned on a "no" answer to issues 11 and 14, respectively, were unanswered.

Special issue 17 as to Pritchard was identical to 11 and 14 except it related to the assignment from Frankfurt's to him and contained the language of the controversial sentence as in the above issues. The jury found that he had such knowledge. In answer to issue 18 the jury found that Pritchard prior to disbursing funds in connection with the $55,000.00 loan to Dalworth knew that Dalworth's $54,000.00 note had been paid in full to Frankfurt's. Issues 19 and 20 conditioned on a "no" answer to issues 17 and 18 were unanswered. The jury in answer to issue 21 found that Fortner first learned of the assignment of the $73,000.00 note to a third party in September, 1962 and to issue 22 that he did not approve of such transfer. It found that at the time Fortner received the $63,266.72 note signed by Sample that he knew the $73,000.00 note had been assigned to a third party and in answering issue 24 conditioned on a "yes" answer to 23 that he received the above note from Sample and accepted it in lieu of any claim of ownership to the $73,000.00 note.

The jury found that $29,942.12 was paid on the $73,000.00 note to Fortner and his attorneys.

The court disregarded special issues Nos. 5, 8, 11, 14, 17, 18, 21, 22 and 25 and the answers thereto on the grounds they were not material and entered judgment for the appellee against the estate of Joe Thomas Sample, deceased, and Dalworth for $68,471.15 plus $5,000.00 attorney's fees, interest and costs and for foreclosure of the lien against the unpaid balance of the $73,000.00 note and against all of the funds in the registry of the court. Appellee recovered judgment against Fortner declaring the latter had no right, title or interest in the $73,000.00 note, the funds in the registry of the court, nor in the land securing the note. Fortner was given judgment against the estate of Sample and against Dalworth on his plea for alternative relief in the sum of $53,438.05 plus interest of 5 per cent per annum from February 22, 1965. Fortner's motion for judgment non obstante veredicto

and amended motion for new trial were overruled and from such ruling Fortner had perfected his appeal.

The appellant Sandra Lee Sample, temporary administratrix of the estate of Sample, deceased, has likewise appealed. Appellant Fortner by 54 points of error contends that there was no evidence and insufficient evidence to support various assumed findings of the court and the judgment generally and that the court erred in disregarding certain findings and in refusing to disregard other findings, in refusing his requested issues, incorrect submission of other issues and in overruling his motions for judgment non obstante veredicto, and amended motion for new trial.

We affirm.

The primary questions to be determined by this court in so far as the appellee Johnson is concerned are:

(1) Did Fortner sustain his burden of proof in showing a defect in the appellee's title to the $73,000.00 note?

(2) Did he sustain his burden of proof and secure favorable jury findings to establish that neither Frankfurt's nor J & J J Sales Company was a holder in due course?

(3) Did Fortner waive any claim or right he may have had in or to the $73,000.00 note by his acceptance of Dalworth's $63,266.72 note representing the unpaid balance on the former note when at the time of his acceptance he knew Dalworth had transferred the note to a third party?

The judgment of the trial court is sustainable on the basis of a "no" answer to either of the first two questions or a "yes" answer to the third question and in our opinion the questions should be so answered.

■ The appellant Fortner's points on no evidence and insufficient evidence to support the judgment and the presumed findings of the court are of no avail to him under the facts of this case. He had the

burden of proof to show a defect in the appellee's title to the note or in establishing that neither Frankfurt's nor J & J J Sales Company were holders in due course. He failed to meet this burden.

There is ample evidence in this record to support the findings and judgment of the trial court.

Since this is admittedly a rather complicated and involved fact situation the status of the $55,000.00 note, the $73,000.00 note, and the funds in the registry of the court at the time of trial are here summarized:

(1) The amount owing by Dalworth Investment Company on its $55,000.00 note:

| | |
|---|---|
| Principal | $55,000.00 |
| Interest: | |
| 9–11–62 to 9–11–64 | 11,000.00 |
| 9–11–64 to 2–22–65 | 2,471.15 |
| Total Principal and interest at 2–22–65 | $68,471.15 |
| Add: | |
| Reasonable attorney's fees allowed by the court | 5,000.00 |
| | $73,471.15 |

(2) The unpaid balance owing on appellee's $73,000.00 note:

| | |
|---|---|
| Original principal | $73,000.00 |
| Less 3 annual installments at $9,733.28 | 29,199.84 |
| Principal balance 9–11–64 | $43,800.16 |
| Add 5% interest 9–11–64 to 2–22–65 | 983.97 |
| Total principal and interest at 2–22–65 | $44,784.13 |

(3) The amount on deposit in the registry of the court:

| | |
|---|---|
| Deposits by appellee: | |
| September 11, 1963 | $12,986.61 |
| September 11, 1964 | 12,409.95 |
| | $25,306.56 |
| Interest earned | 716.10 |
| Total | $26,022.66 |

The $73,000.00 note in question executed by the appellee Earl B. Johnson contains the following endorsements:

"For value received I hereby sell, transfer, and assign to Dalworth Investment Company the within Note, together with any and all liens on the property securing same, without any recourse on me.

(Signed): "Frank N. Fortner D. F.

"For Value Received, Dalworth Investment Company does hereby sell, transfer, and assign to Frankfurt's Texas Investment Corporation the within Note, together with any and all liens on the property securing same, with recourse.

"Dalworth Investment Company

(Signed): "By J. Tom Sample President

"Personally endorsed by J. Tom Sample

"For Value Received we do hereby sell, transfer and assign to W. A. Pritchard, Trustee the within Note together with the Deed of Trust Lien on the property securing same without recourse on us.

"Frankfurt's Texas Investment Corporation

(Signed): "By Victor Frankfurt Pres.

"For value received, I do hereby sell, transfer and assign unto J & J J Sales Company the within note together with any and all liens on the property securing same without recourse upon me.

(Signed): "W. A. Pritchard, Trustee

"For value received, J & J J Sales Company does hereby sell, transfer and assign unto Earl B. Johnson the within note together with any and all liens on the property securing same without recourse upon us.

"J & J J Sales Company

(Signed): "By Janice E. Rains, Partner"

---

The Negotiable Instruments Act, Article 5934, Vernon's Ann.Tex.Civ.St., under the heading "Negotiation defined", states:

"Sec. 30. An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. * * *

"Sec. 31. The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words, is a sufficient indorsement.

"Sec. 32. The indorsement must be an indorsement of the entire instrument. * *

"Sec. 33. An indorsement may be either special or in blank; and it may also be either restrictive or qualified, or conditional."

Section 36 of the Act states that an indorsement is restrictive which either prohibits the further negotiation of the instrument; or constitutes the indorsee the agent of the indorser; or vests the title in the indorsee in trust for or to the use of some other person; and states that the mere absence of words implying power to negotiate does not make an indorsement restrictive.

■ An examination of the endorsements on the $73,000.00 note will reflect that (1) the instrument was negotiated by Fortner when he transferred it in such a manner as to constitute his transferee, Dalworth, the holder thereof; (2) his endorsement was sufficient and was an endorsement of the entire instrument; (3) the endorsement was not restrictive or qualified or conditional. The mere absence of words implying power to negotiate did not make the endorsement restrictive.

Fortner contended in the trial court and now that the title to the $73,000.00 note was defective and that neither the appellee nor

his assignors were holders in due course because of the language of the controversial sentence contained in the two transfer of lien forms.

Fortner plead that he did not endorse the $73,000.00 note, the assignment of lien forms or the $13,013.28 check, and the jury resolved these issues against him. He plead that the note and lien were as collateral to secure the repayment of a loan to be made by Dalworth and then plead as follows: "This defendant would show that Dalworth * * * failed to make such loan and in truth and in fact no such loan was ever contemplated or intended to be made by Dalworth * * *"; and that since the obligation which the assignment was purported to secure never came into existence and was never intended that such condition relating to the transfer became null and void and of no force and effect simultaneously with the execution of the assignment for the reason the loan was in effect repaid at the moment of execution since no loan was ever made or intended, and Dalworth having no interest in said note or liens could not transfer same. That there was no consideration because no loan was made.

■ As previously stated the jury found that Fortner did endorse the $73,000.00 note to Dalworth and signed the two transfers of lien forms. (Exhibits 3 and 4). There is no evidence that Fortner did not receive value for this transfer. He only plead and offered evidence that he did not receive a loan from Dalworth. This was undisputed and the court did not err in refusing to submit an issue on it. This is especially true in view of pleadings which stated such a loan was never contemplated or intended. Under Article 5933, V.A.T.S., § 24, it was presumed that he did receive value. He had the burden of proving failure of consideration. Winters v. Langdeau, Tex., 360 S.W.2d 515, 516 (1962).

There was no evidence that Fortner pledged the $73,000.00 note with Dalworth to obtain a loan. He offered it to Sample for the purpose of borrowing money to purchase gravel property in Arkansas. There is no evidence that Sample did not use the money he borrowed on the $73,000.-00 note for this purpose nor that Sample nor Dalworth did not convey to Fortner an interest in said Arkansas property or other property of value. Fortner must have had some reason for assigning the note to Dalworth since a loan from the latter, according to his pleadings, was not intended nor contemplated. The only reason we can find in the record to explain Fortner's unconditional endorsement and transfer of the note to Dalworth is for purchase of the Arkansas property.

The only evidence from which it could be inferred that Fortner was not fully paid for his note was the fact that on or about September 11, 1962, Sample delivered to him his note for $63,266.72. This note was not referred to in Fortner's pleadings and when he was asked what explanation Sample gave him on delivery of the note he answered, "It was in payment for something that—on this mess here."

■ In the construction of contracts it is essential to ascertain and to give effect, whenever possible, to the real intention of the parties. The insertion of a clause that is inconsistent with such intent will be disregarded as mere surplusage. 13 Tex. Jur.2d pp. 287, 310; Reserve Petroleum Co. v. Harp, 148 Tex. 448, 226 S.W.2d 839 (1950). In view of the pleadings and the testimony it is apparent that the language of the controversial sentence did not express an agreement between Sample and Fortner and should be disregarded as surplusage. Fortner's authorities and argument on pledges are inapplicable.

There was no evidence that the $73,000.00 note was negotiated under any of the circumstances contained in § 55 of Article 5935, V.A.T.S., which will be later discussed.

■ In the event we are mistaken in concluding that there is no evidence and

no finding showing a defect in title to the $73,000.00 note, we will discuss our conclusion that Frankfurt's and J & J J Sales Company were nevertheless holders in due course.

Article 5935, V.A.T.S., § 52, in defining a holder in due course, states: "A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The appellant does not contend that Frankfurt's and Pritchard did not qualify as holders in due course under the first three requirements of § 52, supra. His primary argument on appeal is that they failed to meet the fourth requirement of said section because they knew that the two transfers of lien forms, Exhibits 3 and 4, contained the controversial sentence.

The following sections of Article 5935, V.A.T.S., relate to defects in title to negotiable instruments and notice thereof as affecting the rights of holders:

"Sec. 55. The title of a person who negotiates an instrument is defective within the meaning of this Act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.

"Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

"Sec. 57. A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

"Sec. 58. In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.

"Sec. 59. Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. * * *"

As previously stated, there was no evidence on matters contained in § 55, nor do we find any in connection with §§ 57, 58 or 59, supra, nor were any issues requested or submitted on any of the elements contained therein.

Under Section 56, assuming the pleadings and the evidence will support submission of an issue and its submission is requested, the issue generally is submitted in the language of the statute and ordinarily the inquiry would be: Did the plaintiff, at the time of the purchase of the note in question, have actual knowledge of any infirmity or defect in said note or did he have knowledge of such facts that his action in taking the instrument amounted to bad faith. An issue in this form was not

requested by Fortner nor was one submitted. Fortner requested issues which, in effect, inquired whether Frankfurt and Pritchard prior to disbursement of funds read the controversial sentence and knew it was in the lien forms. Appellee objected to these issues and requested in lieu thereof issues inquiring as to whether or not Frankfurt and Pritchard knew at the time they took the $73,000.00 note that Dalworth had no right to assign it and whether or not they had knowledge of such facts that their action in taking the note amounted to bad faith as defined by the court. The court did not err in disregarding the jury's answers to the issues submitted.

■ The undisputed evidence showed that appellee's assignor, J & J J Sales Company, loaned Dalworth $55,000.00 on the strength of the $73,000.00 note being pledged as collateral and that said note was the only security therefor. Under Article 5933, § 27, supra, for due course holder purposes, J & J J Sales Company's rights against the $73,000.00 note were the same as an outright purchaser except that its rights reached only to the extent of its lien. Continental National Bank of Fort Worth v. Conner, 147 Tex. 218, 214 S.W. 2d 928, 933 (1948). Since J & J J Sales Company transferred the notes and liens in question to appellee, he acquired its rights therein. As heretofore reflected, the amount due on the $55,000.00 note exceeded the unpaid balance owing on the $73,000.00 note and the proceeds in the registry of the court by approximately $2,664.36, including attorney's fees.

■ Assuming that Dalworth acquired the note wrongfully or wrongfully negotiated it, there were no pleadings or evidence that Frankfurt's W. A. Pritchard, Trustee, or J & J J Sales Company (all subsequent holders of said note) had any knowledge of such facts. Fortner's sole argument is that appellee's rights are dependent upon the construction of the terms of the two transfer of lien forms (Exhibits 3 and 4) because Dalworth failed to make a loan to appellant Fortner and thus the assignment to Dalworth was null and void. In the absence of knowledge of any information to the contrary the title to the note, unconditionally endorsed by Fortner and transferred by him would remain absolute and vested in the transferee, or assignee by the language of the controversial sentence.

In 9 Tex.Jur.2d, pp. 63, 64, the effect of collateral instruments, executed at the same time as the negotiable instrument, upon the rights of the holder of the negotiable instrument is stated as follows: "Where other instruments are executed at the same time, for the same purpose, and in the course of the same transaction in which a bill or note is given, all of the papers are treated as one instrument as between the original parties. * * * But the rule does not apply in a suit by holder in due course since his rights are determined by looking only to the negotiable instrument itself." Also, in Continental National Bank of Fort Worth v. Conner, 147 Tex. 218, 214 S.W. 2d 928, 930, it is stated: "Where the suit is one by a holder in due course of a negotiable document, in connection with which other instruments have also been executed between the original parties, the rule, that all the instruments are to be treated as one, has no application, * * *."

Under Article 5935, § 59, supra, Frankfurt's and J & J J Sales Company were deemed prima facie to be holders in due course of said note. "The burden of proof is on the one who denies that the instrument is held in due course to establish this fact by a preponderance of the evidence." Cargill, Inc. v. Continental Grain Co., 388 S.W.2d 247 (Fort Worth Tex.Civ.App., 1965, ref., n. r. e.). See also Continental National Bank of Fort Worth v. Conner, supra.

■ The law is settled in Texas that the test is "good faith" and not diligence, negligence or constructive notice. Thus, the issues containing the language of the controversial sentence were improper.

In the case of American Surety Co. of New York v. Fenner, 133 Tex. 37, 125 S. W.2d 258, 259 (1939), the court quotes with approval the following language from the Court of Civil Appeals opinion: "The opinion also correctly states, quoting from the opinion of this Court in Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701, 106 A.L. R. 821, that it is 'the settled law of this state that the ordinary rule of notice does not apply to the purchaser of a negotiable instrument for a valuable consideration before maturity. The test in negotiable instrument cases is good faith, and°not diligence or negligence. Unless the purchaser has actual knowledge of facts and circumstances that would render the paper noncollectible or has knowledge of such facts as that a purchase of the instrument would amount to bad faith, it is immaterial that he has notice of such facts as would put a reasonably prudent person on inquiry, and that such inquiry would lead to discovery.' * * * It is pointed out in the Wichita State Bank case * * * that it is the rule in this state 'that in the purchase of a negotiable instrument the title is derived from the instrument itself, and not from the title of the party who transfers it.'"

The court, after having found that there was substantial testimony from which it might be inferred that the defendant acted in dishonest disregard of the rights of the bank, remanded the case to the trial court for trial on the correct theory of bad faith instead of the negligence theory it was originally tried on.

In the case of West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090 on page 1096, (1934), the court, quoted with approval from its earlier decision in Wilson v. Denton, 82 Tex. 531, 18 S.W. 620, 622, the following: " 'The ordinary rule of constructive notice which applies to the purchaser of property is not applicable in the case of negotiable instruments. As promotive of their circulation, a liberal view is taken, which makes the bona fides of the transaction the decisive test of the holder's rights. He is entitled to recover upon it if he has come by it honestly. * * and it became the law that, while gross negligence might be evidence tending to show mala fides, and, as such, admissible, it did not in itself amount to proof of mala fides, and was not sufficient to deprive the holder of his right to recover.' "

Page 1097 of 71 S.W.2d contains a summary which states in essence that, knowledge of facts merely sufficient to cause one of ordinary prudence to make inquiry, with failure to do so is not evidence of bad faith for otherwise the jury would be permitted to find bad faith where the evidence shows only ordinary negligence. "Even gross negligence is not the same thing as bad faith and does not of itself amount to proof of bad faith, although it may be evidence tending to prove bad faith. To constitute evidence of bad faith, the facts known to the taker must be such as reasonably to form the basis for an inference that in acquiring the negotiable instrument with knowledge of such facts he acted in dishonest disregard of the rights of defendant. * * * the unheeded suspicious circumstances must be of a substantial character and so strong that bad faith rather than merely negligence can reasonably be inferred from them. * * *"

■ Where the issue is properly raised the question as to whether a person is a holder in due course is for the jury. 9 Tex. Jur.2d 347, § 311. As previously stated the ultimate and controlling issues in this case, assuming there was an infirmity in the $73,000.00 note or a defect in the title of someone who negotiated it, should be in the language of § 56, Article 5935, supra.

■ Since Fortner had the burden of proof to establish that neither Frankfurt's nor J & J Sales Company were holders in due course and it was not established that either had such actual knowledge or acted in bad faith and the controlling issues were not submitted to the jury, Fortner waived this defense and appellee must be consid-

ered a holder through a holder in due course. Their title was derived from the instrument itself.

In view of the authorities herein cited we are of the opinion that the appellee's rights against the $73,000.00 note are not dependent upon the legal meaning of the controversial sentence since he was not an original party thereto. The trial court correctly held that appellee had a valid lien on the $73,000.00 note to the extent of the amount due him on the $55,000.00 note of Dalworth.

In Peavy-Moore Lumber Co. v. First Nat. Bank, 133 Tex. 467, 128 S.W.2d 1158, 1163, 125 A.L.R. 1185 (1939), it was held: "A contemporaneous instrument or agreement, the provisions of which are repugnant to a note or draft, will not be construed as a part of the note or draft. When there is such repugnancy effect will be given to the provisions of the note or draft, which will be regarded as constituting the primary contract."

Neither appellee nor Frankfurt nor Pritchard were parties to the preparation or execution of the two transfer of lien forms, hence the rule of construction that the written instruments are construed against the author would not be applicable against them. The other authorities cited by Fortner are not in point.

In connection with the court's action in disregarding immaterial issues, attention is directed to 57 Tex.Jur.2d, pp. 319–322: "In a cause submitted on special issues it is the duty of the court to render judgment based on the material findings of the jury. The findings must be sufficient to support the judgment. * * * Immaterial findings of fact have no effect as a verdict; they may not be considered as a basis for the judgment, and should be disregarded. Likewise, the fact that the jury inferentially found the existence of evidentiary facts incidental to the main issue cannot furnish a basis for a final judgment. And the court may ignore findings on matters

of law that should not have been submitted."

The disregarded issues relating to the controversial sentence have previously been discussed. The other issues were properly disregarded because they were evidentiary and there was no evidence to support them.

The undisputed evidence was to the effect that the $54,000.00 Dalworth note was paid from the proceeds of the $55,000.00 loan and that Pritchard paid $30,000.00 to Dalworth, $25,000.00 to Frankfurt's and simultaneously received the $55,000.00 note, the $73,000.00 note, transfer of lien, etc. The only testimony on this subject was from Pritchard and Victor Frankfurt. The $54,000.00 loan of Frankfurt's had not been paid prior to Pritchard's disbursement of the $55,000.00. Fortner in his brief admits this and states that following this the $54,000.00 note executed by Dalworth to Frankfurt's was marked "Paid." Pritchard in refinancing the loan which Frankfurt was unable to complete became subrogated to the rights of the latter.

We will briefly discuss the third question concerning the acceptance by Fortner of the $63,266.72 note of Dalworth under the circumstances related above. "Waiver is the intentional relinquishment of a known legal right available at the time, or such conduct as warrants an inference of the relinquishment of the right, whereas estoppel arises wherever, by the fault of one party, another has been induced to change his position for the worse. Waiver does not necessarily imply that one has been misled to his prejudice or into an altered position, but estoppel always involves this element." 60 Tex.Jur.2d 184; in Anderson v. Ladd, 131 Tex. 479, 115 S.W.2d 608, 614 (1938), the Supreme Court cited with approval the following statement from Farmers & Mechanics National Bank v. Head, 7 S.W.2d 61, Com. of Appeals, 1928, "A waiver, as such, must be distinguished

from ordinary estoppel in pais, for it is not essential to the former that the opposite party do anything whatever upon the strength of the statement or act relied upon as constituting a waiver. It is like the legal concept of election of remedies."

As heretofore stated we are of the opinion that Fortner by his acceptance of the $63,266.72 note under the circumstances then existing waived any rights he may have had to the $73,000.00 note.

Appellant argues that the word "intent" should have been incorporated in the issue and cites some authorities relating to the correct submission of such issues.

The appellant, however, failed in his objections to point out to the court the omission complained of. Under Rule 279, Texas Rules of Civil Procedure, the facts are deemed to have been found by the court in such manner as to support the judgment.

Sandra Lee Sample in her appeal contends there were no issues submitted or findings by the jury upon which any recovery could be based against Dalworth or the estate of Sample.

Rule 279, T.R.C.P., provides in part that "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived * * *."

Rules 386 and 390, T.R.C.P., provide for the manner and time in which the statement of facts and transcript are to be filed in this court. The appellant Sample has failed to comply with these rules and Fortner has filed a motion to dismiss the appeal and to affirm on certificate. In view of the record before us, we think the motion to dismiss the appeal of Sandra Lee Sample should be and it is accordingly granted.

In the event we are in error in so doing, we find the appellant Sample's points of error are without merit and each is accordingly overruled.

Each and all of the appellant Fortner's points of error are likewise overruled and the judgment of the trial court is in all things affirmed.