William C. KRAFVE, et al., Appellants,

v.

Robert M. O'KEEFFE, Appellee.

No. 12–86–00218–CV.

Court of Appeals of Texas,
Tyler.

May 31, 1988.

Rehearings Denied June 15 and
July 11, 1988.

Mike Hatchell, Ramey, Flock, Hutchins, Jeffus, Crawford & Harper, Tyler, for appellants.

Otis W. Carroll, Ireland, Carroll & Kelley, Tyler, for appellee.

SUMMERS, Chief Justice.

Upon consideration of appellants' motion for rehearing, we withdraw our original opinion delivered in this cause on December 18, 1987, and substitute therefor the following.

Plaintiff/appellee Robert M. O'Keeffe (O'Keeffe) brought suit against defendants/appellants William C. Krafve (Krafve), Orbit Ventures, Inc. (Orbit), and DAR Oil and Gas, Inc. (DAR), seeking declaratory and injunctive relief for enforcement of an "Agreed Judgment" entered in a prior case between the parties. The central issue in the instant suit is whether "payout," as that term was used in the Agreed Judgment, had occurred, so that O'Keeffe was entitled to conveyance of a one-half interest in certain mineral properties owned by Orbit and placed in escrow for conveyance to O'Keeffe pending occurrence of "payout." The agreement defined "payout" as the time "when the amount of production revenue attributable to O'Keeffe's interest shall equal O'Keeffe's pro rata share of the corporation's outstanding liabilities as of November 30, 1981, plus the sum of all ordinary, necessary and reasonable expenses incurred by the corporation in producing the income during the period beginning November 30, 1981, and ending with the date of the inkind distribution." After a bench trial, the court rendered judgment adopting O'Keeffe's construction of the "payout" formula. We affirm.

The business relationship which led to the current controversy began in 1978 when appellant Krafve became associated

with appellee O'Keeffe in a predecessor company to the appellant Orbit. After two corporate restructurings, Orbit came into existence with O'Keeffe and Krafve each owning fifty percent of the stock.[1]

Orbit's operations were essentially limited to a working interest in two separate oil and gas properties owned by Orbit, one being in the Divide Field in Montana and the other in the Southwest Talco Field in Texas. Orbit was the operator of the Divide Field under a standard operating agreement with the other working interest owners. A dispute arose between the two shareholders concerning control of Orbit's operations. During the pendency of a resulting lawsuit, O'Keeffe and Krafve reached the Agreed Judgment. That agreement provided for the transfer of all of O'Keeffe's stock to Krafve in exchange for a pro rata in-kind conveyance of all oil and gas properties held by Orbit as of a certain date to O'Keeffe. The parties were to execute that transaction upon the occurrence of what was termed "payout."

Approximately one year after the Agreed Judgment was entered, O'Keeffe brought the current action, concerning the proper computation of "payout" under the formula in the Agreed Judgment. Specifically, the dispute is whether the "ordinary, necessary and reasonable expenses" language in the formula included all general expenses incurred by Orbit as an ongoing corpora-

tion, as contended by Krafve, or only those expenses of production from the two oil properties which were the subject of the Agreed Judgment as asserted by O'Keeffe.

Appellants bring three points of error. In their first two points, they contend that the trial court erred in rendering judgment for O'Keeffe in that (first) "payout" as defined in the Agreed Judgment had not occurred when suit was filed and (second) the phrase "all ordinary, necessary, and reasonable expenses incurred by the corporation in producing the income" included all expenses incurred by Orbit as an ongoing corporation as opposed to only the production expenses of the oil properties at issue. In their third point, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's construction of the "expenses" phrase in the "payout" formula.

■ In the interpretation of written contracts the primary concern of courts is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). Both parties agree that the agreement as a whole and the phrase in question specifically are unambiguous.[2] Accordingly, the intent of the parties must be determined as a matter of law by the court from the plain language of the agree-

1. Krafve's interest was actually held in the name of a small family-owned corporation (DAR Oil & Gas, Inc.).

2. The mere fact that the parties urge different interpretations does not in and of itself render the contract ambiguous. *Jones v. Killingsworth*, 379 S.W.2d 362, 367 (Tex.Civ.App.—Tyler 1964), *rev'd on other grounds*, 403 S.W.2d 325 (Tex. 1965). Ambiguity is an issue that must be raised by the pleadings. *Covered Bridge Condominium Assoc., Inc. v. Chambliss*, 705 S.W.2d 211, 214 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Pickering v. First Pyramid Life Ins. Co. of America*, 491 S.W.2d 184, 185 (Tex. Civ.App.—Beaumont 1973, writ ref'd n.r.e.). In this case no ambiguity was pleaded nor was a question of any ambiguity assigned as error in this court. Our dissenting colleague would reverse the judgment and remand the cause for a new trial because the trial court's construction of the agreed judgment has insufficient support in the record; but he candidly concedes that the evidence is also insufficient to support the con-

trary construction argued by appellant. In effect, he finds the agreed judgment ambiguous and that because the question of ambiguity was not raised in the trial court, insufficient evidence was adduced to support the interpretation advanced by either party. This is tantamount to a finding that the agreed judgment is ambiguous and that the cause should be retried on that theory, a conclusion we are not permitted to reach absent properly assigned or fundamental error. *Cent. Educ. Agency v. Burke*, 711 S.W.2d 7, 8 (Tex.1986) (administrative appeal did not raise issue upon which court of appeals reversed); *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex.1983) (reversal on basis of portion of case not appealed unauthorized); *see also Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982) (fundamental error exists only where record shows on its face a lack of jurisdiction or that the public interest is directly and adversely affected).

ment. *Allison v. National Union Fire Insurance Company*, 734 S.W.2d 645, 646 (Tex.1987); *Parks v. Frankfurt*, 476 S.W. 2d 717, 723 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). To achieve this object the court will examine and consider the entire agreement so that none of the provisions will be rendered meaningless. *R & P Enterprises*, 586 S.W.2d at 519.

■ The crux of the controversy centers upon the proper construction to be given the "expenses" phrase in the payout formula set forth in the agreement. This phrase reads "all ordinary, necessary, and reasonable expenses incurred by the corporation *in producing the income.*" (Emphasis added.)

At trial, O'Keeffe called a highly qualified expert in oil and gas practices who testified that "based on the description of payout contained in the agreed judgment," O'Keeffe's interest paid out in "the period of July 1984;" that in making this calculation he interpreted the phrase "ordinary, necessary and reasonable expenses necessary to produce the income" as limited to the expenses directly attributable to the production of revenue from the properties. This interpretation of the "expenses" phrase supports the construction asserted by appellee O'Keeffe and subsequently adopted by the trial court. Assuming, arguendo, that the appellants' view that this language was intended to include all general corporate expenses and not merely production expenses is correct, then the final words of limitation of that phrase would be at the very least surplusage and arguably even in direct conflict with such an interpretation. If that had been the intended meaning, the drafter could simply have referred unqualifiedly to "expenses of the corporation." This court cannot disregard as surplusage the succeeding words of limitation "in producing the income," but rather must give those words effect. *Williams v. J and C Royalty Co.*, 254 S.W.2d 178 (Tex.Civ.App.—San Antonio 1952, writ ref'd).

The "payout" formula, considered in its entirety, also supports the trial court's finding that the expense clause refers to production expenses rather than all corporate expenses. The wording "the income" obviously refers to the "production revenue" from which these expenses are to be subtracted in the formula. It logically follows that "production expenses," rather than all corporation expenses, are to be subtracted from "production revenue" in calculating "pay out."

The appellants, in asserting that the trial court should instead have adopted their broader interpretation, rely heavily upon the presence of the word "all" as in "all ... expenses." This argument is without merit. The word "all" in no way grammatically alters the meaning of the phrase. If that word were to be excised, the class of expenses defined would be no more inclusive or exclusive. The applicable expenses would still be limited to expenses incurred "in producing the income." Since "all" adds no meaning, it constitutes true surplusage. *Fortner v. Johnson*, 404 S.W.2d 892 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.).

We conclude that the trial court properly interpreted the "expense" phrase in the payout formula to include only those expenses directly attributable to the production of revenue from the Divide and Southwest Talco properties. We further hold that the trial court correctly found that O'Keeffe's pro rata interests in the properties were paid out in July of 1984. His third point asserting legal and factual insufficiency of the evidence is inapplicable since construction of the unambiguous written agreement is a question of law for the court. Appellants' three points of error are overruled.

The judgment of the trial court is affirmed.

COLLEY, Justice, dissenting.

I agree with the majority decision withdrawing our original opinion delivered in this cause on December 18, 1987, but I cannot agree to the affirmance in this case. I would reverse the judgment and, because the case was tried on the wrong theory, remand the case for a new trial in the interest of justice.

The case was tried on the theory that the contract embodied in the "Agreed Judgment"[3] and, in particular, the language defining "payout," as set forth in paragraph 1, was unambiguous. Neither party at trial pleaded ambiguity, and it is fair to say that the ambiguity issue was not tried by consent. The parties at oral argument agreed and, indeed represented to this court, that the language of the contract defining "payout" was unambiguous. After a careful study of the entire contract, I am unable to agree that the language defining payout, considered in light of the circumstances surrounding the entry of the judgment, is susceptible of but one certain or definite legal interpretation.

Perhaps the clearest explanation of ambiguity in respect to contract interpretation was made by the court in *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W. 2d 977, 980 (1941), where the court wrote,

> If a written contract is so worded that it can be given a *certain* or *definite* legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, *which, on its face, is capable of being given a definite certain legal meaning.* This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, *plainly and clearly* discloses the intention of the parties, or is so worded that it is not *fairly* susceptible of more than *one* legal meaning or construction. (Emphasis added.)

The foregoing exposition was quoted with approval in *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731–732 (Tex.1981). In *Ideal Lease Service v. Amoco Production Co.*, 662 S.W.2d 951, 953 (Tex.1983), the court remarked, "We agree that the intention of the parties is the primary concern of the courts in interpreting a contract, *but, unless ambiguous,* we must discern that intent from the contract itself. *Ohio Oil*

*Co. v. Smith*, 365 S.W.2d 621 (Tex.1963)." (Emphasis added.)

The trial court's interpretation of the payout formula, as recited in the agreed judgment, when subjected to the "reasonably intelligent person" standard enunciated in *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968), is clearly wrong. The so-called agreed judgment, when so tested, yields not one but two reasonable interpretations of payout. Despite its lofty goal, "to forever settle all disagreements and claims between [Krafve and O'Keeffe]," it fails to do so. When reviewed from its four corners, its disjointed contents provide language reasonably supporting the interpretation of payout espoused by each party to the appeal. The subjective intent of the parties thereto defies discovery, and the trial court's interpretation is incorrect, as indeed it would be, had it favored Krafve's interpretation.

In support of my conclusion that the language of the contractual judgment purporting to provide a formula for determining when payout has occurred, I need only observe that several "reasonably intelligent persons," including the trial judge, the competing expert witnesses, the parties themselves, and counsel radically disagree as to the parties subjective intentions regarding payout as expressed in the judgment.[4]

In *City of Pinehurst*, the parties on appeal agreed that a city ordinance effecting a contract was *unambiguous.* The court wrote, "*We agree* with the parties that the [ordinance provisions] are unambiguous." *Id.* at 517. (Emphasis added.) Then the court proceeded to review the trial court's interpretation by adopting and applying the "reasonably intelligent person" standard found in Restatement of Contracts § 230 (1932) which reads in part:

> [T]he standard of interpretation of an intergration, except where it produces an ambiguous result, ... is the meaning

---

3. A complete copy thereof is attached hereto as Appendix "A."

4. I am fully cognizant of the rule that mere disagreement of the parties per se does not create an ambiguity when one does not otherwise exist.

that would be attached to the [writing] by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the [contract], other than oral statements by the parties of what they intended it to mean.

The majority in this case has concluded that since the parties "agree that the [judgment] as a whole and the [provisions describing payout] in particular are unambiguous," the *intention* of the parties "must be determined as a matter of law by the court from the *plain language* of the [judgment]." (Emphasis added.) I respectfully disagree. *Allison v. National Union Fire Ins. Co.*, 734 S.W.2d 645 (Tex. 1987), cited by the majority, may stand for the proposition that our *review* of the judgment below, resting as it does, on the trial court's legal determination that the agreed judgment was unambiguous, is limited to a determination of whether that interpretation, tested by the "reasonably intelligent person" standard is correct, but certainly the rule in *Allison* does not make this court a captive of the conclusions of either the parties or the trial court.

The majority states that O'Keeffe's expert witness' interpretation of a portion of the language found in paragraph 1 of the agreed judgment, reading "all ordinary, necessary and reasonable expenses incurred by [Orbit] in producing the income" to mean ordinary, necessary and reasonable expenses, *directly* attributable to the production of revenue from the oil and gas properties was correctly adopted by the trial court.[5] In reaching this conclusion, the majority ignores language appearing in the text of the contract reading,

> The corporation shall not incur any expense during [the interval before payout] without O'Keeffe's approval.... Notice of expenses *shall be the monthly financial statement of [Orbit] and* Authority

for Expenditures (AFE's).... Any objection [by O'Keeffe] to an expense must be stated within thirty (30) days of the notice of such expense, otherwise the right to object is waived [by O'Keeffe]. (Emphasis added.)

....

6. No interest shall be charged O'Keeffe on the liabilities chargeable against his interest as provided for in Paragraph No. 1 hereof, unless interest is charged to Orbit as the result of a change in the law of the State of Montana regarding severance taxes, in which event, O'Keeffe shall bear his pro rata portion.

The record reveals that O'Keeffe made no timely objections to the expenses reflected in the monthly statements sent him by Orbit except perhaps to one matter not material here. The evidence demonstrates that the AFE's are written notices sent by a unit operator to all working interest owners when unusually large expenses are incurred by the operator for repairs, reworking operations, or equipment purchases, etc. for the unit well or wells in order to maintain or increase production. The contractual judgment provides that notice of expenses "shall be" the monthly financial statements *and* the AFE's. It is undisputed that the monthly financial statement sent by Orbit included a salary paid to Krafve, at least in part, for geological work and studies made by him in the Divide Field. The trial court's judgment disallows the cumulative sums of Krafve's salary along with other expenses claimed by Krafve.

In a nutshell, the majority upholds the trial court's judgment limiting the phrase "the sum of all ordinary, necessary and reasonable expenses incurred by [Orbit] in producing the income" to what the majority refers to as expenses *directly* incurred in producing the working interest income

---

**5.** In fact, the trial judge made no such express conclusions of law, but it does appear that the judgment below does rest upon that expert testimony that the language used clearly expressed the parties' intention that such expenses were limited to those expenses commonly delineated in a standard operating agreement between working interest owners in leases pooled or combined to form one or more production units.

from the Divide Field.[6] In so doing the majority misreads the judgment in light of the record before the trial judge. No form of the word *direct* appears in the agreed judgment, and the phrase used, when read and considered along with the entire contract, is not susceptible of but one clear, definite and certain legal meaning; and thus, in my view, no "reasonably intelligent person" familiar with the "operative usages" of the words traditionally used in oil and gas contracts, and "knowing all the circumstances" surrounding the entry of the contractual judgment would conclude after a review of the instrument before this court, that O'Keeffe's working interest income was subject only to payment of his pro rata share of the character of expenses described in a standard operating agreement such as the one involved in the Divide Field.

Because I am so persuaded, I would reverse the judgment. Further, because I am also persuaded that the agreed judgment is patently ambiguous, I would remand the cause for retrial to determine the true meaning intended by the parties in their use of the language found in the payout formula as to the character of expenses chargeable against O'Keeffe's interest in Orbit.

### APPENDIX A

### AGREED JUDGMENT

On this the 24th day of November, 1982, the parties through their attorneys appeared in open court and announced that in full and final settlement of the above entitled and numbered cause the parties have reached an agreement to be made the Judgment of this Court.

The Court finds that the parties have reached an agreement which the parties believe is reasonable, fair and equitable to all of the parties concerned.

The Court further finds that the parties, by requesting the Court to enter this Order, wish to forever settle all disagreements and claims between and among the parties.

The Court finds that Robert M. O'Keeffe is the owner of fifty (50) per cent of the stock of Orbit Ventures, Inc.

The Court further finds that the agreement entered into by the parties is a fair, equitable and reasonable resolution of all disagreements and claims of the parties.

IT IS ORDERED, ADJUDGED AND DECREED that:

1. Orbit Ventures, Inc. shall make a pro rata in-kind distribution of all oil and gas properties owned by the corporation as of November 30, 1981, to Robert M. O'Keeffe upon payout; payout being when the amount of production revenue attributable to O'Keeffe's interest shall equal O'Keeffe's pro rata share of the corporation's outstanding liabilities as of November 30, 1981, plus the sum of all ordinary, necessary and reasonable expenses incurred by the corporation in producing the income during the period beginning November 30, 1981, and ending with the date of the in-kind distribution. The corporation shall not incur any expense during the aforementioned period without O'Keeffe's approval, which shall not be unreasonably withheld. Notice of expenses shall be the monthly financial statement of the corporation and Authority for Expenditures (AFE's). All disputes concerning the reasonableness of any such expenditure shall be subject to one arbitration at the time of payout and before the distribution with each party choosing one arbitrator and the two choosing a third arbitrator. The decision of the majority shall be binding on both parties and the losing party shall pay all costs and expenses of arbitration. Any objection to an expense must be stated within thirty (30) days of the notice of such expense, otherwise the right to object is waived. Orbit may proceed with the proposed expenditure before a decision has been reached by arbitration. The determination of the amount of the outstanding liabilities as of November 30, 1981, shall be made by Fred Bunker within ten (10) days

---

**6.** The net income to Orbit from its working interest in the Fannin County Southwest Talco Field is not involved because Orbit was not the operator of that property.

hereof. The computation of the corporation's assets and liabilities shall be made without regard to those oil and gas properties which must be assigned to John Gallacher upon the payment and satisfaction of all debts attributable to John Gallacher reversionary interest.

2. All of the stock owned by R.M. O'Keeffe is and shall be redeemed effective on the date of the in-kind distribution as agreed upon in Paragraph 1 hereof.

3. A conditional assignment of O'Keeffe's interest in the corporation's oil and gas properties shall be executed by Orbit and delivered to Citizens First National Bank of Tyler, Texas, as trustee to be delivered to O'Keeffe at the time of the in-kind distribution provided for in Paragraph 1 hereof. O'Keeffe's stock in the corporation shall be transferred to Citizens First National Bank of Tyler, Texas, as trustee subject to a pledge agreement to be signed within ten (10) days after this date which stock shall be delivered to Orbit or its appointee at the time of the in-kind distribution as provided for by Paragraph 1 hereof. O'Keeffe's stock while held in trust may not be voted unless Orbit is in breach of this agreement.

4. The corporation, through its officers, shall use their best efforts to furnish O'Keeffe a financial statement by the 30th of each month applicable to the payout provided for by Paragraph No. 1 hereof and shall furnish such other information reasonably necessary for O'Keeffe to determine his payout balance.

5. In the event Orbit is placed in bankruptcy, receivership or other creditors proceeding O'Keeffe's interest in the corporation's oil and gas properties shall be delivered to him immediately unless prohibited by law.

6. No interest shall be charged O'Keeffe on the liabilities chargeable against his interest as provided for in Paragraph No. 1 hereof, unless interest is charged to Orbit as the result of a change in the law of the State of Montana regarding severance taxes, in which event, O'Keeffe shall bear his pro rata portion. Any dispute over interest expense incurred,

if objected to, shall be determined by the Court.

7. Oil and gas properties as that term is used here includes the corporation's leases, wells, plants and equipment located at Divide Area, Sheridan County, Montana; and Southwest Talco Area, Franklin County, Texas.

8. The parties shall execute any and all documents necessary to effectuate and enforce this Judgment.

9. The parties shall pay their own attorneys' fees and all costs of suit are adjudged against the parties by whom incurred.

10. All relief prayed for and not specifically granted herein is denied.