CONTINENTAL NATIONAL BANK OF FORT WORTH V. H. M. CONNER ET AL.

No. A-1712. Decided November 10, 1948.
(214 S. W., 2d Series, 928.)

*Thompson, Walker, Smith & Shannon* and *John A. Kerr,* all of Fort Worth, for petitioner.

The trial court and the Court of Civil Appeals erred in holding that the note from the Conners to Womack, which was an unconditional promise to pay a certain sum on a definite date, was not a negotiable instrument, soleley because it had a reference in the face of said note to the mechanic's lien which secured it. Cramer v. Dallas Lbr. Co., 283 S. W. 596; Arrington v. Mercantile Protective Bureau, 24 S. W. (2d) 383; Wood v. Sparks, 59 S. W. (2d) 361.

*Richard Owens,* of Fort Worth, for respondents.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Continental National Bank of Fort Worth, petitioner here, sued respondents, H. M. Conner and wife, to enforce for the amount of $1,400.00 and interest a mechanic's lien note of $4,250.00, made by the Conners and hypothecated to the bank by the payee of the note, A. D. Womack, who was also the contractor in the mechanic's lien contract; the pledge being security for a loan or loans to Womack by the bank in the principal sum of $1,400.00. The premises in question were not a homestead at the time of the execution or hypothecation of the note and contract. The administrator of Womack's estate and others were parties below, but they have no connection with the controversy at the present stage.

The Conners defended on the ground that the bank stood in the shoes of Womack and that, by reason of Womack's failure to complete the construction work in accordance with the mechanic's lien contract nothing was due him or the bank on the note, although at the time suit was filed, the unincumbered value of the work done was apparently in excess of the bank's advances. The bank in turn, as hereafter more fully explained, asserted itself to be a holder in due course of the Conner's note and as such entitled to enforce it and the lien without regard to their equities against the payee, Womack, under the contract.

The note was payable October 21, 1945, to Womack's order and, together with the contract, was endorsed and delivered by him to the bank on October 15, 1945, or six days before maturity, against an advance to him on that date of $1,000.00. A further advance, amounting to $400.00, was made on November 10, 1945, or some 21 days after maturity of the pledged note,

which meanwhile had evidently remained in the bank's possession as security for the first advance. The record suggests that these advances or loans were payable 30 days from date, respectively, but does not show a rate of interest or whether they were evidence by notes, although they appear to have been later consolidated and extended by means of a note executed by Womack under date of December 10, 1945, in the principal sum of $1,400.00, with provision for interest only after maturity and at the rate of 10% per annum. This note will be referred to again lated in the present opinion, as will also the character of the evidence supporting the above recitals of fact.

The trial court evidently rejected the bank's claim to stand in a better position than its endorser, Womack, and submitted issues to the jury apparently on the theory that its right of recovery, if any, depended on Womack's having substantially performed the mechanic's lien contract. On the verdict judgment was rendered for the bank in the sum of $913.00, with foreclosure; the amount thus awarded representing the excess of the contract price of $4,250.00 over the total of payments made by the Conners to Womack, Womack's unpaid debts to workmen and materialmen and the jury's estimate of the cost to the Conners of completing the work after Womack's default and death. On appeal by the plaintiff bank the Court of Civil Appeals held—properly, we think—that the case should not have been tried on the substantial performance theory, but it also denied the bank's right to enforce the pledged note as a holder in due course of a negotiable instrument, held that it might recover only what its endorser, Womack, could recover under the lien contract and remanded the case for trial in quantum meruit. 209 S. W. (2d) 639.

While agreeing that the trial court's judgment should in any event be reversed, we disagree with the decision to the extent that it denies althogether the bank's status as a holder in due course and therefore disagree also with the order for retrial of the whole case on the quantum meruit theory.

■ If the pledged note in suit was in fact negotiable and plaintiff bank a holder in due course from the payee, Womack, the effect of Womack's default under the lien contract is quite different from what it would be in cases like those cited by the Court of Civil Appeals, in which either there was no claim that the instrument in suit was negotiable or the controversy was between the maker on the one hand and on the other the payee rather than the endorsee. Where the suit is one by a holder in

due course of a negotiable document, in connection with which other instruments have also been executed between the original parties, the rule, that all the instruments are to be treated as one, has no application, and the statement of the Court of Civil Appeals that "the mechanic's lien note along with the lien contract referred to in the note obligated the payee to construct the building" would not be apt; nor would such circumstances be a case for the further statement of the court that "the original payee could not have transferred a greater interest in the mechanic's lien note than he held himself." Art. 5932, Sec. 3, R. C. S.; Page v. Ford, 65 Oregon 450, 131 Pac. 1013, 45 L. R. A. N. S. 247, and cases cited therein; also Ferring v. Verwey, 200 Wis. 631, 229 N. W. 46; Mortgage Bond Co. v. Stephens, 181 Okla. 182, 72 Pac. (2d) 831; Paepcke v. Paine, 253 Mich. 636, 235 N. W. 871, 75 A. L. R. 1205, and A. L. R. note following the report; Bailey, Negotiable Instruments and Contemporaneously Executed Written Contracts, 13 Texas Law Review 278, and 14 Texas Law Review 307. The fact that the mechanic's lien or other contract securing the note is executory in character and known by the noteholder so to be does not of itself make the note and contract a single non-negotiable instrument, when the note itself is otherwise in negotiable form. Lozano v. Mayers, 18 S. W. (2d) 588 (Com. App.) ; West v. First Baptist Church of Taft, 123 Texas 388, 71 S. W. (2d) 1090.

■ Doubtless what the Court of Civil Appeals intended to hold was that the hereinafter quoted language in the note itself conditioned the makers' obligations therein upon performance of the mechanic's lien contract by the payee-contractor, Womack, and so made the note non-negotiable under the applicable portions of Article 5932, R. C. S., which require its essential obligations to be unconditional in terms and certain or determinable as to amount and time of payment. The pertinent provisions of the note in suit read as follows:

"Failure to pay any portion of the principal or interest hereon * * *, *or failure to perform any agreement contained in the below mentioned lien instrument* shall, at the option of the holder thereof, mature this note.

"*This note is secured by mechanic's lien of even date* between Maker and Payee relating to: Lot 11 in Block 4, HOMER L. AIKMAN ADDITION to the City of Fort Worth in Tarrant County, Texas, *to which said mechanic's lien contract reference is hereby made* * * *." (Underscoring ours).

Whether the Court of Civil Appeals meant to apply it here or not, the rule in this state undoubtedly is that before a ref-

erence in an otherwise negotiable instrument to another agreement will make the former non-negotiable, "it must appear therefrom that the paper is to be burdened with the conditions of the agreement. Arrington v. Mertantile Protective Bureau, 24 S. W. (2d) 383 (Com. App.). The rule is not illogical when we regard on the one hand the basic statutory requirements for negotiability consisting of absoluteness and certainty in terms (Art. 5932, Sec. 1, R. C. S.) and on the other hand the explanations in the same article (Sections 3 and 5) that the terms of the instrument are not rendered conditional by inserting therein (a) "a statement of the transaction which gives rise to the instrument"; or (b) a provision which "Authorizes the sale of collateral securities in case the instrument be not paid at maturity." The statutes do not limit the length or particularity of the reference in the instrument to the underlying transaction or the security for the instrument. Conceivably the "statement" might consist of a complete copy of the instrument referred to. Only when it ceases to be a "statement" and becomes something else can it affect the negotiability of the document in question. See Ferring v. Verwey, supra.

The above quoted provisions of the note in suit are the only ones that could conceivably be said to change the clearly unconditional and certain obligations set forth in the first part of the same instrument, which are in the time-honored form of a negotiable promissory note. In our view, they do not purport to do so. With the one possible exception below discussed, the quoted provisions are either a mere "statement" expressly permitted by Article 5932, Section 3, above mentioned, or a reference to the security given for the note as impliedly authorized, we believe, by Section 5 of the same article. In the quoted language, plainly no particular phrase regarding the relationship between the note and the lien contract contains the words "burdened with", "subject to" or their equivalent. The expression "to which said mechanic's lien contract reference is hereby made" seems either the usual layman's idea of "making it legal" or just another instance of our inherited professional weakness for tautology. It might also be explained as the convenient equivalent of a more elaborate "statement" of the underlying transaction as permitted by Art. 5932, supra. See Paepcke v. Paine, 253 Mich. 636, 235 N. W. 871, 75 A. L. R. 1205.

■ The provision most seriously urged to make the note non-negotiable is the one entitling the noteholder to accelerate maturity for breach by the Conners of their obligations under the

contract. This provision is indeed something different from a mere statement of the underlying transaction and, of course, entails that the noteholder must look to the contract to see whether its terms have been violated, assuming he cares to accelerate maturity for this reason. But it does not purport to render conditional or uncertain the makers' otherwise absolute and certain obligations in the earlier part of the note. It has been held in this state that an acceleration option based on failure to pay an installment of principal or interest as required in the note itself does not so condition or render uncertain the maker's primary obligations as to defeat negotiability. Puckett v. Big Lake State Bank, 73 S. W. (2d) 893, error refused. And an impressive line of decisions from other states reaches the same result where the provision in question, as in the instant case, bases the acceleration option upon violation of a term or terms of an accompanying mortgage or other security contract. See Davis v. Union Planters Nat. Bank & Trust Co., 171 Tenn. 383, 103 S. W. (2d) 579, and cases cited; Enoch v. Brandon, 249 N. Y. 263, 164 N. E. 45 (N. Y.); Pollard v. Tobin, 211 Wis., 405, 247 N. W. 453; Paepske v. Paine, supra.

We accordingly conclude that the pledged note in suit was a negotiable instrument and therefore enforceable against the defendant makers without regard to their defenses against the payee under the contract, if or to the extent that plaintiff bank was a holder in due course, having acquired its interest in the note in good faith for value before maturity. Art. 5935, Sec. 52, R. C. S.

As before stated, the bank's claim originated with two advances, of $1,000.00 and $400.00 respectively, the former being six days prior to and the latter some 20 days after maturity of the pledged note in suit. This and the fact that, until after its first advance, the bank had no actual knowledge of any default by its endorser, Womack, under the mechanic's lien contract, as testified to in clear, positive and uncontradicted terms by the bank's vice president, Rhodes, as was the further fact that this witness was the only representative of the bank who had any knowledge of the transaction. Rhodes similarly testified that while Womack had given the bank a written assignment of the Conner note and the mechanic's lien contract at the time he endorsed and delivered the two latter documents to Rhodes, the assignment had been misplaced and could not be found after search. None of this evidence as to the bank's good faith or the date of its advances and of Womack's delivery of the note was objected to by the defendants Conner, and in fact

their counsel cross-examined Rhodes on the subject, though without in anywise shaking his direct testimony.

■ Against these circumstances, the defendants, Conner, first contend that the issue is foreclosed against the bank by its own pleadings; the bank's original petition not having mentioned its two "advances" to Womack as being the consideration for the pledge to it of the Conner note, but for this purpose having referred only to Womack's note of December 10, 1945, in which, as before stated, the advances were consolidated considerably after the maturity date of the pledged note. We overrule this contention for the following reasons. First, the bank in its supplenental pleadings did claim itself to be "a holder in due course of said note, for value and before maturity without notice of any defect therein" (Tr. p. 3), while the defendants, Conner, not only failed to except (as required by Rule 90, R. C. P.) to these supplemental allegations as being inconsistent with the bank's original petition, but also pleaded in their first amended original answer "that this plaintiff is an assignee of the said A. D. Womack, and said plaintiff had full notice of all of the herein set out and described rights of these defendants" (Tr. p. 10). Secondly, as stated above, the defendants, when confronted with the testimony of the bank's witness, Rhodes, that the bank had actually acquired the pledged note prior to its maturity and in good faith as security for its $1,000.00 advance, failed to object to such testimony as at variance with the pleadings or to ask a postponement on grounds of surprise and proceed to cross-examine the witness about these same matters. Had objection been made to the testimony, no doubt the court would have allowed the bank to file a trial amendment or granted a postponement under Rule 66, R. C. P.

■ The defendants, Conner, further argue that the bank cannot have been a good faith taker of the note or contract because the latter called for completion of the work by October 21, 1945, and that when the bank first took the documents on October 15, 1945, the contractor, Womack, according to the evidence and a finding of the jury, was obviously too far behind in the construction to escape default within the remaining six days. This contention also must be overruled. By the undisputed evidence of the witness, Rhodes, above referred to, the bank had no actual knowledge about the status of the construction work until some time after October 15, 1945, and the circumstances are not such as to imply bad faith as a matter of law. The test is not the familiar one of constructive notice arising

from negligent failure to investigate. Art. 5935, Sec. 56, R. C. S. Even evidence of "gross negligence" on the part of the taker of a negotiable instrument, while *admissible* on the issue of bad faith, is insufficient of itself to support a finding of that "dishonest disregard" which is necessary to defeat the rights of the holder under the statute. West v. First Baptist Church of Taft, supra, and cases cited therein. It cannot be said that the bank's conduct in failing to investigate on October 15, as to whether Womack could complete his contract within the following six days, was evidence of gross negligence, much less of "dishonest disregard" of the rights of the defendants, Conner.

■ The Conners finally deny the bank's right to assert its position as a holder in due course, because it failed to request a corresponding jury issue. Under Rule 279, R. C. P., such failure does not effect a waiver where the ground of recovery or defense in question is established as a matter of law, and we find it was so established in this case. The holder of a negotiable instrument is presumed to be a holder in due course until the contrary appears from evidence. Article 5935, Sec. 59, R. C. S. Not only did the evidence fail to show the contrary, but, as already suggested, it conclusively established that, at least to the extent of the $1,000.00 originally advanced, it was such a holder. The testimony of the bank's vice president, Rhodes, was of such character that, under the established exception to the general rule, his status as an interested witness may be disregarded. Cochran v. Wool Growers Central Storage Co., 140 Texas 184, 166 S. W. (2d) 904.

■ The plaintiff bank also seeks foreclosure under the mechanic's lien contract. Since, as regards its advance of $1,000,00, it is a holder in due course of the note secured by the contract, the fact of the contractor Womack's default under the latter does not defeat its right to enforce the lien to that extent. The lien is but an incident of the note, and to the degree that the bank is a bona fide holder of the note, so it is a bona fide holder of the lien. Pope v. Beauchamp, 110 Texas 271, 219 S. W. 447, cited in West v. First Baptist Church of Taft, supra. The premises in question not being homestead property when the note and lien contract were executed, decisions such as Murphy v. Williams, 103 Texas 155, 124 S. W. 900, are not applicable.

■ Coming now to the matter of the bank's rights as regards the $400.00 which it advanced to Womack against the pledged note after maturity of the latter, while we find few cases on the point, it seems plain that the bank is not a holder in due course

and therefore can recover from the Conners only to the extent that Womack himself could recover for his work done under the mechanic's lien contract. Art. 5933, Sec. 27, R. C. S., provides in effect that, for the purpose of becoming a holder in due course, a pledgee or other lien holder of a negotiable instrument is the same as an outright purchaser, except that the former's rights reach only "to the extent of his lien". Art. 5935, Sec. 54, R. C. S., provides that "Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him." Since the effect of acquiring a negotiable instrument or interest therein after its maturity is substantially the same as if it were taken after notice of an infirmity, these statutory provisions require the conclusion we have reached. The same result finds support in decisions. Kaufman Oil Mill et al v. Republic Nat. Bank & Trust Co., 43 S. W. (2d) 269 (Tex. Civ. App.), and Texas Banking & Ins. Co. v. Turnley, 61 Texas 365, therein cited. See also Dresser v. Missouri & Iowa Railway Construction Co., 93 U. S. 92, 23 L. Ed. 815. The abovementioned statutory presumption that the bank is a holder in due course, does not apply in the light of the testimony of the bank's witness, Rhodes, which was the only testimony as to the dates and other circumstances of the bank's two advances to Womack and which was as clear and convincing about the $400.00 advance as it was concerning the earlier one of $1,000.00. The action of the Court of Civil Appeals in remanding the case for a new trial was, therefore, proper insofar as it applied to the $400.00 item of the bank's claim.

As to the order which this court should make in the light of the foregoing, we think the circumstances justify us in affirming the judgment of the Court of Civil Appeals insofar as it remands the case for a new trial on the issue of the bank's claim of $400.00 and at the same time reversing that court's judgment on the issue of the bank's claim of $1,000.00 and rendering judgment for the bank on such issue. As to the latter item, the case seems to have been fully developed, and, as heretofore explained, the bank's position as a holder in due course of the Conner note was established as a matter of law. The two issues are sufficiently severable to permit of disposal in this severed form unless they are otherwise by reason of the foreclosure which we must allow the bank if judgment is here rendered in its favor. Even if the bank's rights in quantum meruit

were also secured by the lien, the trial court could no doubt order a sale under the judgment here rendered and require an amount to be reserved from the surplus proceeds sufficient to pay whatever recovery might flow from the trial of the $400.00 claim. But such rights evidently exist only in personam, since they come into play for the very reason that the lien contract itself was not substantially performed, and, as observed by the Court of Civil Appeals, the contract did not contain the clause customarily used in this state to preserve the lien against the contingency of less than substantial performance. While the Texas cases denying foreclosure under such circumstances seem to be all homestead cases and therefore not very.persuasive against existence of the lien in the instant case (see, for example, Paschall et ux. v. Pioneer Savings & Loan Co., 19 Tex. Civ. App., 102, 47 S. W. 98), the prevailing view in other states denies the contractor the benefit of a mechanic's lien even in the absence of homestead considerations, unless he has substantially performed the lien contract. Biles v. Schultz, 191 Ala. 671, 67 So. 981; Harris v. Graham & Bordley, 86 Ark. 570, 111 S. W. 984; Keys v. Garben, 149 Iowa 394, 128 N. W. 337; Girouard v. Jasper, 219 Mass. 318, 106 N. E. 849; Frohlich v. Klien, 160 Mich. 142, 125 N. W. 14; Maynard v. Lange, 71 Or. 560, 143 P. 648, Am. Cas. 1916E, 547. Since the bank, therefore, does not have a lien on the premises for what it may recover on its $400.00 claim in quantum meruit, there is no complication involved in a sale of the property under the $1,000.00 judgment before final adjudication of the $400.00 claim.

We therefore: (a) reverse the judgment of the Court of Civil Appeals insofar as it applies to the $1,000.00 claim of the plaintiff bank, petitioner here, and render judgment as to such issue that said bank recover of the defendants, H. M. Conner and wife, Nannie M. Conner, respondents here, the sum of $1,000.00, with interest at the legal rate from June 6, 1947, the date of entry of the judgment of the trial court and with foreclosure of the mechanic's lien upon the premises hereinabove described; and (b) affirm the judgment of the Court of Civil Appeals insofar as it remands for a new trial the issue of said bank's claim for $400.00.

Opinion delivered Nov. 10, 1948.

No motion for rehearing filed.