Robert Rudolph SCHWAB, Appellant,

v.

RANGER INSURANCE COMPANY,
Appellee.

No. 7025.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 13, 1969.

Lefler, Walker & Lefler, Alto V. Watson, Beaumont, for appellant.

Vinson, Elkins, Weems & Searls, Adrian M. Burk, Houston, for appellee.

KEITH, Justice.

Schwab owned a multi-engine aircraft insured by Ranger Insurance Company (hereinafter called "Ranger"), valued at more than $16,000.00, the face of the policy. The plane was totally destroyed while being operated by one Paskie. Ranger instituted a declaratory judgment suit seeking exoneration of liability, and Schwab filed a cross-action. After a trial to a jury, Ranger was granted the relief is sought. Schwab was denied recovery on the policy and has appealed. We affirm.

In its suit, Ranger plead the issuance of the policy in question and the destruction of the plane in an accident while being operated by Paskie. It then alleged that the policy contained an exclusion which it then quoted:

"This Policy does not apply:

\*   \*   \*   \*   \*   \*

"2. to any occurrence or to any loss or damage occuring [sic] while the aircraft is operated, while in flight, by other than the pilot or pilots set forth under Item 7 of the Declarations."

The Item 7 referred to in the exclusion reads:

"7. PILOT CLAUSE: Only the following pilot(s) will operate the aircraft while 'in flight' and while holding proper pilot certificate(s) with appropriate ratings as required by the Federal Aviation Agency:

"ROBERT SCHWAB OR ANY OTHER PRIVATE OR COMMERCIAL PILOT HAVING A VALID MULTI-ENGINE RATING AND A MINIMUM OF 1,000 TOTAL LOGGED HOURS, INCLUDING AT LEAST 250 HOURS IN MULTI-ENGINE AIRCRAFT AND AT LEAST 25 HOURS IN THE SAME MAKE AND MODEL AS THE INSURED AIRCRAFT."

In connection with the exclusion, Ranger plead, further, that Paskie did not have either the total minimum number of logged hours (1,000) or the minimum of logged hours in a multi-engine aircraft (250) as specifically required by this insurance policy.

In the posture of the case, as made by Ranger's pleadings, the burden was upon Schwab to show liability under the policy. Rule 94. This language from Hardware Dealers Mut. Insurance Co. v. Berglund, 393 S.W.2d 309, 311 (Tex.Sup.1965) is apt and controlling:

"Here the insurance company pleaded specific exclusions which were set forth

in the policy and thus raised issues of contract coverage. The burden of producing evidence to demonstrate that their losses were not attributable to the pleaded excluded hazards rested upon respondents [assureds] * * * [citing cases]."

See also: Paulson v. Fire Insurance Exchange, 393 S.W.2d 316, 318 (Tex.Sup. 1965).

■ Ranger having plead the exclusion under the policy pertaining to the qualifications of the pilot, Schwab was obligated either to introduce evidence to prove, and secure a jury finding, that the pilot was qualified under the terms of the policy, or, to introduce evidence to prove, and secure jury findings, that the plane was converted by Paskie.

Schwab answered and filed a cross-action claiming the policy to be in full force and effect and alleging, specifically, that the plane had been converted by Paskie, thereby claiming the exclusion relied upon by Ranger to be inoperative.

Schwab offered no evidence concerning Paskie's qualifications to operate the plane or showing that he was a qualified pilot as defined in the exclusion mentioned above. Instead, he sought to establish that Paskie had converted the plane to his own use contrary to his instructions.

In a trial before a jury, a single special issue was submitted:

"Do you find from a preponderance of the evidence that Paskie had possession of the plane with instructions from Schwab that it was not to be flown without Schwab's consent?"

To which the jury answered: "We do not."

Neither party objected to the form or sufficiency of the issue, leveled any objections to the charge, or tendered any requested issues.

The court entered judgment for Ranger; and Schwab appeals, asserting four points of error: (1) insufficient evidence to support the jury's answer to the issue quoted above; (2) the response of the jury is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong; (3) the undisputed evidence showing that Paskie converted the plane and it being completely destroyed in the accident, Schwab was entitled to judgment for $16,000.00 "as a matter of law;" and, (4) the cause should be reversed because if there was any issue of fact in the case, it was whether or not the plane had been converted on the occasion in question; and, such issue (and no ultimate issue) not having been submitted, the cause should be remanded to the trial court.

■ We consider first the points complaining of insufficiency of the evidence to support the answer of the jury and that contending that the answer is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. In so doing, we consider the entire record, and all of the evidence on these points came from Schwab.

It was Schwab's contention that he had entrusted the plane to Paskie for the purpose of selling it. He said that Paskie came into possession of the insured plane on November 17, 1966, when he went to Wisconsin with Schwab's permission to get it. It was then flown back to Houston by a qualified pilot with Paskie aboard as the co-pilot. Sometime thereafter, and Schwab is not too certain just when, Paskie flew the plane to Beaumont to pick up the log books, this being the first time Schwab had actually seen him. Later on, Paskie and Schwab and his wife flew the plane to Sante Fe, New Mexico; and on the return trip, Schwab acted as co-pilot. Schwab was "very much aware" of the policy provision relating to the qualifications of the pilot of the plane.

On cross-examination, Schwab admitted that he never asked Paskie about his license to pilot planes or to see his license; and, in fact, learned that Paskie did not have a multi-engine pilot license only during the

trial. However, answering the leading questions of his counsel, Schwab later gave diametrically opposed answers.

He also testified that he authorized Paskie to sell the plane for $15,500.00, and that "any amount above that he could have as a commission." Further testimony was given that Paskie was not to fly the plane "unless he personally called me and ask [sic] if he could use it. And he never— and every time that he said that he was demonstrating it to a customer he called me and asked me  *  *  *" Further, he said that he did not know of Paskie flying the plane without express permission, although he was "a competent airplane driver."

The plane was not equipped for instrument flying weather, being the reason that there was a delay in the Sante Fe trip taken by the parties; and, he would not have given Paskie permission to fly in the "heavy instrument weather" which prevailed on the date of the fatal flight.

The vagueness of the instructions given to Paskie is set out in this series of questions propounded to Schwab on cross-examination:

"Q.  *  *  *  Now, when did you tell Mr. Paskie not to use—not use this airplane? What day?

A. (no response).

Q. Or when or where? Where were you when you told him to not use the airplane without your permission?

A. When he—when he first asked me about taking the airplane and selling it.

Q. Is that back in November of '66?

A. Yes.

Q. You told him not to fly it at any time other than when you got—

A. Yes, this was the agreement.

Q. All right. And did you ever tell him again?

A. Well, I couldn't remember."

This testimony was improved somewhat on re-direct examination but lacked corroboration from any other witness.

■ In the issue submitted, the burden of proof was placed properly upon Schwab; and, actually, all the jury found was that Schwab had not convinced them of the affirmative of the issue. Considering all of the evidence in the record, we are of the opinion that neither of these two points reflect error and each is overruled. See: Pederson v. Scott, 366 S.W.2d 260, 261 (Tex.Civ.App., 1963, err. ref. n. r. e.).

■■ In the third point, Schwab contends that the undisputed testimony established the fact that Paskie had "converted" the plane to his own use at a time when the policy was in full force and effect, so that he was entitled to judgment as a matter of law, for the admitted value thereof, $16,000.00. Because of the implied adverse finding by the trial court, in considering this point, we take into consideration only the evidence favorable to such implied finding; but, our resumé of the evidence under points one and two discloses that Schwab had not established the conversion as a matter of law.

He was an interested party and, ordinarily, his credibility was for the jury to determine. But, Schwab would have us apply the exception to the general rule as enunciated in the leading case of Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., 96 S.W.2d 788 (Tex.Civ. App., 1936, no writ).[1]

1. This case is authoritative because written by the late Chief Justice Alexander while on the Court of Civil Appeals and because of its approval by our Supreme Court. See: Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908 (1942). It has been cited with approval as late as October 11, 1968 in Liberty Sign Co. v. Arendale, 433 S.W.2d 23, 25 (Tex.Civ.App., 1968, no writ).

 Having recognized the exception to the general rule as enunciated by Chief Justice Alexander, we choose to do as the Fort Worth Court did in *Arendale,* supra (Fn. 1), from which this quotation is taken:

> "We are of the opinion and hold that the general rule applies to the facts of this case rather than the exception to such rule and thus, 'The jury in the performance of its duty was privileged to reject all or a part of appellant's witnesses' testimony, even if it be regarded as uncontradicted * * * [citing cases].' Kansas City Fire & Marine Insurance Co. v. Duncan, 330 S.W.2d 469, 471 (Texarkana Civ.App., 1959, no writ hist.)."

We do this because, in our opinion, the testimony of Schwab was not "clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon." Thus, in our view of his testimony, the jury's privilege to disagree with Schwab was not taken from it under the exception to the general rule. The best that Schwab did by his testimony was to raise a fact issue. This was impliedly recognized since his counsel did not file either a motion for a peremptory instruction or a motion to disregard the finding of the jury to the issue submitted. This point is overruled.

We quote Schwab's fourth and final point:

> "This cause should be remanded because a jury trial was demanded and if there were an issue of fact in the case it was whether the plane on this particular occasion was converted and this issue was not submitted to the jury, and in fact no ultimate issue of fact was submitted to the jury."

Schwab did not make a motion for peremptory instruction, did not object to the charge as given to the jury, requested no other or additional special issues, and did not move to disregard the jury finding. He first complained in his motion for new trial.

This complaint set out in the fourth point came too late and was waived. Rule 279; Cox v. Huffman, 159 Tex. 298, 319 S.W.2d 295, 296 (1959); Allen v. American Nat. Ins. Co., 380 S.W.2d 604, 609 (Tex.Sup.1964). The right of Schwab to recover was not, we repeat, established as a matter of law. It was his burden to bring forward the evidence and to procure favorable jury findings to support his position. This he failed to do. He cannot, therefore, prevail. Cf. Continental Natl. Bk. of Ft. Worth v. Conner, 147 Tex. 218, 214 S.W.2d 928, 933 (1948). The point is overruled.

Affirmed.