**WALTER E. HELLER AND COMPANY,**
Appellant,

v.

**DA–JOR CONSTRUCTION COMPANY,**
Appellee.

No. 7147.

Court of Civil Appeals of Texas, Beaumont.

Nov. 19, 1970.

Maroney & Cely, Lufkin, for appellant.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, Lufkin, Baker, Botts, Shepherd & Coats, Houston, for appellee.

PARKER, Chief Judge.

Walter E. Heller and Company sued Da-Jor Construction Company for the balance due on a note dated November 5, 1962, executed by Da-Jor Construction Company as maker, payable to the order of Texas Tractor Company, secured by a chattel mortgage of even date, upon a bulldozer and a grader. Such note and chattel mortgage were assigned by Texas Tractor Company to Walter E. Heller and Company on November 8, 1962. Da-Jor Construction Company filed a counterclaim against Walter E. Heller and Company for damages by reason of an attachment alleged to be wrongful. Insurance Company of North America intervened as the maker of a replevy bond for replevin of the bulldozer on behalf of Da-Jor Construction Company, claiming that it was not liable on the replevy bond and claiming indemnity against Da-Jor Construction Company for any amount of money it might be required to pay to appellant, Walter E. Heller and Company. The trial court outside the presence of the jury upon the stipulation of all parties determined there was usury in such note "and from the uncertainty of payment date as set out in the acceleration clause of the chattel mortgage, that Walter E. Heller & Co. was not a holder in due course and that Walter E. Heller & Co. took the note subject to all the defenses outstanding against Texas Tractor Company." Upon such determinations by the trial court and the jury verdict, judgment was entered as follows:

"It is ORDERED, ADJUDGED AND DECREED by the Court that plaintiff, Walter E. Heller & Company do have and take nothing from either Da-Jor Construction Company or Insurance Company of North America by reason of this suit, and that defendants, Da-Jor Construction Company and intervenor, Insurance Company of North America, and each of them, go hence without day.

"It is further ORDERED, ADJUDGED AND DECREED by the Court that the Model HD–16AC, Serial No. 1802, Allis-Chalmers Diesel Tractor, having been returned by Da-Jor Construction Company by reason of its claim of failure of consideration, is now and is hereby declared to be the property of Walter E. Heller & Company.

"It is further ORDERED, ADJUDGED AND DECREED by the Court that the Model 45, Serial No. 1842, Allis-Chalmers Diesel Motor Grader is not the subject of foreclosure, and said Motor Grader is hereby declared to be the property of Da-Jor Construction Company, unencumbered by any chattel mortgage of Walter E. Heller & Company.

"It is further ORDERED, ADJUDGED AND DECREED by the Court that cross-plaintiff, Da-Jor Construction Company do have and take nothing from Walter E. Heller & Company, and that cross-defendant Walter E. Heller & Company go hence without day.

"It is further ORDERED, ADJUDGED AND DECREED by the Court that all

costs of court incurred herein are hereby taxed against the plaintiff, for which the Clerk may have his execution."

Walter E. Heller and Company has appealed. It will be called "Heller." Da-Jor Construction Company will be called "Da-Jor" although at different places it is spelled in different ways in the record. Insurance Company of North America will be called "INA" or "intervenor." Texas Tractor Company will be called "Texas Tractor."

Heller held an old note of Da-Jor in the sum of $8,370.75, being the unpaid balance on a motor grader purchased before the transaction in question. This old debt is part of the $29,473.65 involved here. The purchase price of the used bulldozer was $20,371.96 with Da-Jor paying $3,000.00 cash, leaving $17,371.96 as part of the $29,473.65 note. Additional small items brought the total price of the package to $26,315.76. The note issued was for $29,-473.65. The chattel mortgage clearly shows the amount of interest charged was $3,-157.89. It was upon this basis the face amount of $29,473.65 was fixed. Actually the note had two years of six per cent interest added on. Thus the note was mathematically usurious. The note called for the payment of the principal amount in 24-monthly installments with interest from date with no per cent per annum. The note stated that upon default in payment of any installment "the *aggregate amount* of this note remaining unpaid * * * shall without notice * * * become due." (Emphasis supplied.) The first seven monthly installments on the note were paid, each being in the sum of $1,228.00. The installment due July 20, 1963, and all subsequent installments were not paid and prior to October 14, 1965, Heller sued upon the acceleration clause for $20,877.65, for further accrued interest at ten per cent by reason of default amounting to $7,307.18 and for $6,500.00 attorney's fees. The acceleration clause called for unearned interest, again making the note usurious.

Heller does not now on appeal contest the existence of usury, but it contends in its Point Four that the trial court:

"* * * committed reversible error in basing its judgment upon a finding that the promissory note made the basis of plaintiff's claim was usurious because said promissory note bears no interest and is not usurious on its face, and plaintiff had no notice of an interest rate which was usurious at the time the said promissory note was negotiated to plaintiff, Walter E. Heller & Company, and plaintiff was therefore a holder in due course."

Such point of error does not challenge the existence of usury. Heller concedes that the guiding principle of law is that, "A purchaser of a note is not a holder in due course if he knows at the time of his purchase that the consideration * * * is illegal, as where one purchases a note with knowledge that it is void for usury." 10 C.J.S. Bills and Notes § 330, p. 832.

There is an implied finding of the trial court that Heller had knowledge of usury at the time it purchased the note. Heller does not complain of the failure of the trial court to make such a finding under Texas Rules of Civil Procedure, rule 299. It complains only that the evidence will not support such an implied finding of knowledge to Heller. Jordan as President of Da-Jor signed the note and chattel mortgage on November 5, but neither document was filled in at the time. Carlos Watson was President of Texas Tractor. H. Kreeger, Jr. was Assistant Secretary of Heller. As part of the official record of Heller is a memorandum which we quote:

"In a discussion with Carlos Watson on November 6th, I have agreed to purchase the new transaction on Vernon Jordan when received on the following basis. Selling price of the HD–16A $20,371.96, Cash Down Payment, being the first and last installments $3,000.00, Balance to be Financed $17,372.00, Pay-Off of the ex-

isting grader our account #40345, estimated at $8,300.00, approximate total to be financed $25,600.00. Out of the proceeds of this entire transaction $2,800.00 will be deducted and applied to the Bassett account. The new account will be set up on a 24 month basis and should have installments somewhere in the neighborhood of $1,000.00 a month.

"Watson has talked to Jordan and Jordan claims to have ability to meet this amortization and will keep the new account current.

"As soon as the papers come in this letter of approval plus the contracts will be referred to Purchasing Department for close out of the existing account and purchase and set up of the new."

Two days later on November 8, the chattel mortgage and note were forwarded by Texas Tractor to Heller with the request: " * * * we will appreciate your handling for us at your earliest convenience." A letter from Texas Tractor to Heller shows the actual purchase date of the note and mortgage by Heller was November 12.

From the memorandum of Kreeger the conclusion is that Heller had full knowledge of the note and chattel mortgage it contemplated purchasing. This was conceded by Petech, the Heller Collection Manager, in his testimony. The new note and chattel mortgage were to include the old balance of the Da-Jor note which Heller was holding. The principal of the new note and chattel mortgage securing it was left blank when Jordan signed them. The Kreeger memorandum merely estimated the old balance at $8,300.00. The exact amount had to be accurately determined before the new note could be completed. Petech conceded that Heller was probably the only party with the information to do so. Both the note and chattel mortgage were forwarded to Heller. The chattel mortgage clearly shows the amount of interest being charged was $3,157.89. Possessing the actual note and chattel mortgage Heller could not avoid knowing the financing facts. Petech

testified that before Heller paid out its money it had received and was aware of the terms of the note and chattel mortgage; that Heller then paid Texas Tractor the face amount of principal of the note less the financing charge of Heller. Heller was completely aware of usury before it concluded its purchase of the note and chattel mortgage by paying out its money.

Heller's position with reference to the note under consideration is governed by the Negotiable Instruments Act, Article 5935, §§ 54, 59, Vernon's Ann.Civ.St., reading:

§ 54: "Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

§ 59: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

■ Heller not being a holder in due course takes subject to the defenses of the maker, Da-Jor. Continental National Bank of Fort Worth v. Conner, 147 Tex. 218, 214 S.W.2d 928, 933 (1948).

The application of the latter case to the instant case is distinctly stated in Allied Bldg. Credits, Inc. v. Ellis, 258 S.W.2d 165 at p. 166 (Tex.Civ.App.—Waco, 1953, no writ):

"The rule is that where additional instruments are executed in connection with a negotiable instrument, as between the original parties, all instruments are to

be treated as one. Where one is a holder in due course, the above rule does not apply, and the rights of the holder are determined by looking only to the negotiable instrument itself. But here the case is different. Appellant Finance Company, who purchased the note, and *claims* to be a holder in due course, while not an original party to the note, not only *had knowledge* of the additional instrument, but actually *caused it to be executed.* Appellant by its course of action becomes an *original party to the additional instrument*; and forfeits what might otherwise have been its status as a holder in due course. Therefore, as between Appellees (makers of the note), and Appellant (who required the additional instrument), the note and the additional instrument must be treated as one. See Continental Nat. Bank [of Fort Worth] v. Conner, 147 Tex. 218, 214 S.W.2d 928, 929." (Emphasis by the Waco Court.)

Heller, who purchased the note and claims to be a holder in due course, cannot be a holder in due course for it had knowledge of the note and chattel mortgage and actually caused each to be executed. Thus Heller by its own course of action becomes an original party to the additional instrument and forfeits what might otherwise have been its status as a holder in due course. Further, the note and the chattel mortgage are separate instruments that have the same date, were executed at the same time and must be considered as one instrument. In passing upon no evidence points in this opinion, we consider only the evidence favorable to such finding of the jury. The entire record is considered in passing upon insufficient evidence points and contentions and findings contending the findings of the jury are against the overwhelming weight and preponderance of the evidence so as to be manifestly unjust. Point Four is overruled.

Heller's Point One is as follows:

"The trial court erred in rendering judgment that Walter E. Heller & Company take nothing based upon the jury's answer to Special Issue No. 6, whereby the jury found that Walter E. Heller & Company required Texas Tractor Company to obtain from Dajor Construction Company a certificate of delivery and completion as a part of its agreement to take the Texas Tractor Company note and chattel mortgage because there is no evidence of record to support the jury's affirmative answer to said Special Issue No. 6, or the rendition of a judgment based thereon."

In addition to the evidence stated hereinbefore we consider other evidence. On November 23, 1962, Heller wrote to Texas Tractor as follows:

"As of this date, we have not received the Delivery Receipt on the above purchased transaction.

"Please check your files and forward the requested document to the writer's attention."

On January 4, 1963, Petech, the Collection Manager for Heller, wrote Carlos Watson, the President of Texas Tractor stating the first installment on the note had not been paid. He continued, "after the attached letter to him (Jordan) is mailed, we will try to reach him on the telephone." Petech testified that he could not remember whether or not he thereafter did call Jordan. Jordan, on the other hand, testified that Petech did call and that Jordan advised him that he had not paid because the tractor could not be used.

On Janupary 10, 1963, Heller wrote to Texas Tractor as follows:

"On November 23, 1962, we forwarded a letter requesting the Delivery Receipt on the above mentioned transaction. Inas much as we have not received this document since that date, would appreciate your checking your files and forwarding same."

This letter assumes that a delivery receipt had been obtained but through oversight had not been forwarded to Heller.

On January 24, Texas Tractor, in a letter written by the secretary to Carlos Watson, to Heller, the following was written:

"In compliance with your request of January 10, 1963, we are enclosing Certificate of Delivery and Completion on the following account: Da-Jor Construction Co * * *"

Here, again the jury could not fail to note that Texas Tractor had complied with the request without ever once questioning the right of Heller to demand such a certificate.

The certificate of delivery and completion is on Heller's printed form. It states:

"The undersigned hereby acknowledges receipt in good condition, and, if required, satisfactory installation of the goods and chattels covered by conditional sales contract, chattel mortgage, lease or rental agreement, executed by the undersigned on November 9, 1962.

"DA–JOR CONSTRUCTION COMPANY
"By /s/ Vernon Jordan
"President"

Jordan testified he had never been asked for a delivery certificate. Admitting all other signatures on all other documents and never questioning any other documents, *Vernon Jordan flatly testified that the signature on the certificate of completion and delivery was not his.* No one connected with Heller or Texas Tractor testified in any manner disputing this statement by Vernon Jordan that the latter's signature was a forgery.

Carlos Watson, President of Texas Tractor testified:

" * * * we didn't have a consistent policy with these completion certificates, in most cases they were obtained from the customer, but not all cases.

* * * * * *

" * * * I personally never concerned myself with these things and that as often

as not Texas Tractor Company didn't bother with them or obtain them, but I believe that the reason they bothered to print them up is primarily for laundromats and things like that that have to be installed and have the plumbing in and all that sort of thing."

Petech testified these forms were used for laundromats. Petech's complete inability to explain why all the Heller letters were being written demanding the certificate on construction equipment, if Heller had not required it, is found in this question and answer:

"Q Well, how in the world is it that you all kept writing down here for this certificate of delivery that you usually get with laundromat equipment with Hoople Jordan involved here?

"A Mr. Carrigan, all I can tell you is that the certificate is not required."

Looking only to the evidence favorable to the finding and disregarding all opposed thereto, Point One is overruled.

We consider that Heller contends in Point Two that the evidence was insufficient to support the jury finding in answer to Special Issue No. 6. Further we consider that Heller contends in Point Three that the finding of the jury in answer to Special Issue No. 6 is against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. Considering the entire record, Points Two and Three are each overruled.

Heller in its Point Seven contends the trial court committed reversible error by overruling plaintiff's objection to Special Issue No. 6. This objection was that the issue was an immaterial issue; that the only issue in question was whether or not Texas Tractor did obtain a delivery certificate from Da-Jor or that Da-Jor was ever requested to execute a certificate of delivery and completion; that Da-Jor executed a certificate of delivery and completion.

The evidence under this has been discussed. Under the Allied Bldg. Credit, Inc. v. Ellis case, supra, Point Seven is overruled.

In Point Five Heller contends the trial court committed reversible error in basing its judgment upon the findings of the trial court that Heller was not a holder in due course of the note as set forth in the judgment.

Heller contends that since the note itself did not refer to the chattel mortgage, the acceleration clause in the chattel mortgage could have no bearing whatever on whether or not the note in question as a certain payment date and would therefore be negotiable. We have held under the consideration of Point Four that the note was usurious and therefore the chattel mortgage should be considered with the note because Heller was not a holder of the note in due course. The same reasoning in disposing of Point Four applies here under Continental National Bank of Fort Worth v. Conner, supra, and Allied Bldg. Credits, Inc. v. Ellis, supra.

The Uniform Commercial Code was not in effect at the time of this transaction and the trial court necessarily was limited to consideration of the Negotiable Instruments Law of the State of Texas. Point Five is overruled under the above and Security Bank & Trust Co. v. Foster, 249 S.W. 227, 231 (Tex.Civ.App.—El Paso, 1923), reversed on other grounds 288 S.W. 438 (Tex. Com.App.1926).

In answer to Special Issue No. 7 the jury found that Texas Tractor warranted to Jordan that the Allis-Chalmers tractor (bulldozer) was capable of doing routine day-to-day construction work and in answer to Special Issue No. 8, it found it was not so capable of performing such work. Heller contends in its Point Six that the trial court erred in overruling its objection to Special Issue No. 7 because an affirmative answer to such special issue could not support a judgment for defendant because a special issue inquiring whether defendant relied upon such representation was raised by the evidence but was omitted from the court's charge. The sales manager of Texas Tractor, who made the sale to Da-Jor of this bulldozer, testified that the bulldozer was sold on the fundamental basis of doing routine day-to-day work. This it could not do. No further issues were needed. Heller relies upon the decision of Shaw Equipment Co. v. Hoople Jordan Construction Co., 428 S.W.2d 835 (Tex.Civ.App.—Dallas, 1968, no writ). Such decision is not relevant to this action. Point Six is overruled.

There is a cross-point of error in INA as follows:

"The trial court erred in rejecting all testimony concerning the lack of authority of Vernon Jordan to issue the Insurance Company of North America replevy bond involved herein."

In view of this opinion and the disposition of this case, this cross-point of error is not passed upon by this court.

Affirmed.