**J. M. O. GALLEGOS et ux., Appellants,**

**v.**

**GULF COAST INVESTMENT CORPORATION, Appellee.**

**No. 15910.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 25, 1972.

Rehearing Denied Aug. 31, 1972.

Gordon L. Moise, Houston, for appellants.

Urban, Coolidge, Pennington & Scott, Charles M. Bardwell, Houston, for appellee Gulf Coast Investment Corp.

Leonard Z. Finger, Houston, for appellee Texas American Builders.

PEDEN, justice.

Suit on a promissory note for home improvements given by Mr. and Mrs. Gallegos to Texas American Home Builders,

who promptly sold it to Gulf Coast Investment Co., along with a mechanics' and materialmen's lien contract and deed of trust given to secure payment of the note.

Gulf Coast brought this suit against the appellants, who joined Texas American as third party defendants and alleged that Texas American and Gulf Coast had conspired to defraud them. Also, that agents, servants or employees of Texas American, acting within the scope of their employment, had induced defendants to execute the note, contract and deed of trust by fraudulently representing to them that they would not be charged for the aluminum siding which was to be applied to their house, only for the labor. That Gulf Coast was not a holder in due course.

When this cause was called for trial on the merits, the trial court granted Texas American's motion for dismissal, which asserted that the Gallegos' third-party action against Texas American sought only the cancellation of the contracts and other instruments signed by Mr. and Mrs. Gallegos and announced that Texas American disclaimed any interest in them.

At the close of the evidence in the jury trial of Gulf Coast's cause of action, the trial court withdrew the case from the jury and granted Gulf Coast's motion for judgment.

The appellants complain that the trial court erred 1) in withdrawing this case from the jury and rendering judgment in favor of Gulf Coast, 2) in dismissing Texas American and refusing to allow Mr. and Mrs. Gallegos to file a trial amendment, 3) in excluding from evidence the original contract between Texas American and the Gallegos and 4) in excluding from evidence an interest rate book.

It is the position of appellee Gulf Coast that under the evidence in this case Gulf Coast was, as a matter of law, a holder in due course of a negotiable instrument and thus was not subject to the defenses raised by Mr. and Mrs. Gallegos.

■ The instruments in question were executed prior to June 30, 1966, the effective date of the Uniform Commercial Code, so the Texas Negotiable Instruments Act was the applicable law.

It was shown that the Federal Housing Administration foreclosed its first lien on the Gallegos' home and that the trustee under a deed of trust conveyed it to the Federal Housing Commissioner on June 1, 1965.

In support of their first point of error the appellants argue that Gulf Coast was not a holder in due course, that appellants, who could not speak or read English, were fraudulently induced to sign the instruments in question, that fact issues were raised as to whether the appellants were free from negligence in doing so and that Gulf Coast and Texas American conspired to defraud them.

■ Since the trial court sustained the plaintiff's motion for judgment on the basis that there were no fact issues to be submitted to the jury, we must accept as true the evidence in the record supporting the Gallegos' allegations against the plaintiff. All conflicts and inconsistencies must be resolved in favor of Mr. and Mrs. Gallegos, and we must draw all inferences therefrom most favorable to their alleged cause of action. Constant v. Howe, 436 S.W.2d 115 (Tex.1968).

■ A purchaser for value of a note negotiable on its face cannot be a holder in due course if he requires the payee of the note to secure the execution of an additional instrument by the maker as a condition precedent to his purchase of the note. Allied Building Credits v. Ellis, 258 S.W. 2d 165 (Tex.Civ.App.1953, no writ), 44 A. L.R.2d 32, 117; Heller & Co. v. DaJor Construction Co., 460 S.W.2d 266 (Tex. Civ.App.1970, no writ). In the Allied Building Credits case, supra, the additional instrument required by the purchaser of the note was a certification by the maker of the note, on a form furnished by the

purchaser, that the work in question had been fully completed. The opinion stated:

"The rule is that where additional instruments are executed in connection with a negotiable instrument, as between the original parties, all instruments are to be treated as one. Where one is a holder in due course, the above rule does not apply, and the rights of the holder are determined by looking only to the negotiable instrument itself. But here the case is different. Appellant Finance Company, who purchased the note, and *claims* to be a holder in due course, while not an original party to the note, not only *had knowledge* of the additional instrument, but actually *caused it to be executed*. Appellant by its course of action becomes an *original party to the additional instrument*; and forfeits what might otherwise have been its status as a holder in due course. Therefore, as between Appellees (makers of the note), and Appellant (who required the additional instrument), the note and the additional instrument must be treated as one. See Continental Nat. Bank of Fort Worth v. Conner, 147 Tex. 218, 214 S. W.2d 928, 929."

Mr. L. B. Litton, an assistant secretary of Gulf Coast testified that he had supervision and control over the loan records. He said Gulf Coast bought the note in question from Texas American Builders in the ordinary course of business for a valuable consideration before any payments on it were due. The face amount of the note was $2,866.50, and no payments were received on it. The note bears the date May 7, 1965. His records show it was assigned to Gulf Coast on or about that date, that a mechanics' and materialmen's lien was executed on May 6, 1965 and assigned to Gulf Coast on May 7.

A letter dated May 3, 1965 from Gulf Coast to Mr. Gallegos was admitted in evidence. It stated that his application for credit in the amount of $1,950 through Texas American Builders had been approved. Mr. Litton related that Gulf Coast bought the loan for $1,852.50 and the payments over five years would total $2,866.50.

The note was admitted in evidence. It appears to bear the signature of Mr. Gallegos, and Mrs. Gallegos appears to have signed it by making an X. Mr. Litton testified that Gulf Coast furnished to Texas American and to numerous other home improvement contractors the forms which the defendants signed, including a completion certificate dated May 7, 1965. He was asked what items were included in a loan package from a home improvement contractor "before you would make a disbursement." He replied that first they would have checked the credit and merits of the borrower, they would have a promissory note, an M. & M. lien and a completion certificate.

Appellant Mrs. Elvira Gallegos testified through an interpreter that the circumstances of her signing the contract were that she was cooking and heard her husband talking to some people; she was called in to sign the contract. She told them she didn't know how to sign, and she put an X on it. They showed her a picture of how her house would look "on the day of remodeling." The contents of the contract were not explained to her "because I wasn't present."

The two men who brought the contract didn't return and didn't finish the job. She remembers going to a lady's home to sign the paper. She was told to come and sign the contract because the person dealing with her wanted to get paid.

She can't read Spanish or English.

The paper she put her X on was never explained to her. Her husband had just come in and was feeling sick when the men came to get the paper signed. They didn't tell her how much the payments would be and neither did the original salesmen. She can't remember being told she was signing a promissory note or a mechanics' and materialmen's lien contract.

When she went to sign the contract there was no one there to interpret for her besides her husband. She can't remember being given a copy of the contract or being told the papers could be assigned to someone else. She went to the home of the notary public to sign the paper because the man wanted to get his money that day.

Interest was never mentioned to her. Work had not been completed on their home when she went to the house of the notary public to sign the contract, but she was told to sign the contract and the house would be completely remodeled. The only part of the work that had been partially done at the time was the putting on of aluminum siding, and it was never completed.

She doesn't remember what she and her husband were to pay for the loan. She was told that after the siding was put on, they were going to take pictures.

Appellant Jesus Maria O. Gallegos next testified. He said he could speak just a little English and could not read it. He testified that the salesmen told him they would take pictures of his home before and after the remodeling to use for advertising and would charge him just the cost of the labor, which was $395. He didn't know he was to pay more than $2,800 until "Gulf Coast Finance Co." called him and told him he was to pay 60 installments of $47.-78 each.

He and his wife did sign the contract for the door-to-door salesmen, and work was started two or three days later. They also signed a contract when taken before a notary public. He remembers signing only those two contracts. His attorney then asked why he signed the third contract, "this instrument"? He said he did so because the man told him that he needed to get it signed so that he (the carpenter) could get his pay.

Gallegos testified that when he went before the notary public they didn't tell him he was signing an M. & M. lien contract or that the papers could be assigned. He later called American Builders and Gulf Coast and told them that the work had not been completed.

On authority of Allied Building Credits v. Ellis, supra, we hold that the proof that Gulf Coast had knowledge of and required the additional instrument, the completion certificate, made of Gulf Coast an original party to the additional instrument. It thus lost what might otherwise have been its status as a holder in due course, and is bound by any defenses the appellants had against Texas American.

Mr. Gallegos testified to fraudulent misrepresentations made to him as to the amount to be charged for the work, but there is no evidence that he relied on them. As we have noticed, he testified that he relied on a carpenter's representation that his signature was needed when he signed an unidentified instrument, but such representation was not shown to be untrue. Mrs. Gallegos also related that they went to a notary public's home to sign some papers because the carpenter wanted to get his money that day. This testimony does not raise the element of reliance on fraudulent misrepresentations.

One who seeks to rescind an agreement because of fraudulent representations must show that he relied on such representations and that they induced him to execute the agreement. Traders & General Ins. Co. v. Bailey, 127 Tex. 322, 94 S.W.2d 134 (1936). In order to avoid a contract for fraud it is necessary to show that the fraudulent representation was relied on to the extent that it was a material factor in inducing the making of the contract and without which it would not have been made. First State Bank of Bellaire v. Olde Colony House, 414 S.W.2d 221 (Tex. Civ.App.1967, writ ref. n. r. e.); Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141 (Tex.1909).

We find no other fact issues raised by the evidence which support any

defensive theory pleaded by the defendants or tried by consent. As to partial failure of consideration, the appellants offered testimony that the work was not completed, but made no showing as to degree or extent. Partial failure of consideration does not invalidate a contract, but is a defense *pro tanto thereto.* American National Bank of Houston v. American Loan & Mortgage Co., 228 S.W. 169 (Tex.Com. App.1921, judg. adopted). The defense of partial want of consideration is allowed only to the extent that it is shown. L. D. Powell Co. v. Sturgeon, 299 S.W. 274 (Tex.Civ.App.1927, no writ). We overrule the appellants' first point of error.

In their second point the appellants complain of the trial court's having granted the motion for dismissal filed by Texas American and having refused to permit appellants to file a trial amendment. We overrule this point. Texas American's motion for dismissal contained a disclaimer as to any·interest in the instruments which Mr. and Mrs. Gallegos were seeking to have set aside and an assertion that the petition of the Gallegos' sought no relief against Texas American other than cancellation of such instruments.

It also prayed for general relief and contained allegations that agents, servants and employees of Texas American, acting within the scope of their employment, made certain *fraudulent misrepresentations* of fact to Mr. and Mrs. Gallegos thus inducing them to sign the note in question, and that "said representations were material to the fact that these defendants signed said note and said defendants relied on these representations to their damage."

■ Except in special situations, such as *rescission of a contract, removing of a* cloud on the title of property or application for an injunction, a general prayer authorizes a judgment for any relief (within the court's jurisdiction) justified by the proof admitted under the allegations of the complaint and consistent with a theory of the claim reflected in the petition. 2 McDonald, Texas Civil Practice 157, Pleading: Petition § 6.26 (1970 ed.).

■ The Gallegos' prayer for cancellation of the instruments is inconsistent with a prayer for a judgment over against Texas American for the amount of any recovery by Gulf Coast from Mr. and Mrs. Gallegos, so their prayer for general relief would not authorize such a judgment in their favor.

■ Mr. and Mrs. Gallegos complain that they should have been allowed to amend their third-party action to ask that in the event Gulf Coast obtained a judgment against them they should recover against Texas American. We think there would be little surprise in such an amendment, but find nothing in the record to show that appellants ever reduced such proposed amendment to writing and filed it as a pleading in this case. They have waived their proposed amendment. Smith v. Davis, 453 S.W.2d 340 (Tex.Civ.App.1970, writ ref. n. r. e.).

They have also waived it by failing to ask for a continuance or for permission to withdraw their announcement of ready. Tanebaum Textile Co. v. Sidran, 423 S.W.2d 635 (Tex.Civ.App.1967, writ ref. n. r. e.).

■ We find no merit in the appellants' third and fourth points of error. Although the trial judge sustained an objection to the written contract, its contents were read to the jury and were in evidence without objection.

■ As to the interest rate book which was offered in evidence, no showing was made as to its authenticity, reliability or accuracy.

We affirm the judgment of the trial court.